[No. D028511. Fourth Dist., Div. One. Oct. 21, 1998.]

SMITH KANDAL REAL ESTATE, Plaintiff and Appellant, v.
CONTINENTAL CASUALTY COMPANY, Defendant and Respondent.

408

## COUNSEL

Gauntlett & Associates and Stanley H. Shure for Plaintiff and Appellant.

Brestoff & Winston, Dennis A. Winston and R. Jane Lynch for Defendant and Respondent.

## OPINION

**McDONALD, J.**—Smith Kandal Real Estate (Smith Kandal), a partnership, is a real estate broker insured for the years 1994 and 1995 under real estate agents' errors and omissions liability policies issued by Continental Casualty

Company (Continental). Michael and Deirdre Morgan (the Morgans) served a draft complaint on Smith Kandal, seeking damages incurred in a real estate transaction in which Smith Kandal was the broker for the Morgans. Smith Kandal tendered to Continental the defense of the Morgans' claim. Continental rejected the tender, asserting that because of "Exclusion O" and the Ventana Ranch exclusion there was no potential for coverage for the Morgans' claim.

Smith Kandal filed this action against Continental, seeking a declaration that Continental was obligated to provide a defense to the Morgans' claim under the policies. The trial court denied Smith Kandal's motion for summary judgment and granted Continental's cross-motion for summary judgment, ruling that the 1994 policy had expired, and that under Exclusion O and the Ventana Ranch exclusion there was no potential for coverage for the Morgans' claim. Smith Kandal timely filed this appeal.

I

*Factual Background*

A. *The Insurance Policies*

The parties do not dispute the fact that the Morgans' claim, made in 1995, is within the basic scope of coverage afforded by the 1994 and 1995 policies. The issue is whether either Exclusion O or the Ventana Ranch exclusion excludes the Morgans' claim from coverage.

1. *The 1994 Policy*

Smith Kandal is a licensed real estate broker. Continental issued a professional liability policy for the calendar year 1994 (the 1994 policy) covering Smith Kandal[1] as the named insured. The policy covered claims against Smith Kandal for negligent acts, errors or omissions in the rendering of or failure to render professional services as a real estate broker, agent or salesperson, subject to specific exclusions from coverage contained in the policy.

The 1994 policy contained Exclusion O, which stated that Continental would not defend or pay for:

"any **claim** arising from the . . . sale . . . of property developed, constructed or owned by:

---

[1]The named insured was Smith Kandal's predecessor in interest, Smith Mitchell Real Estate. That Smith Kandal has succeeded to all rights under the policy is undisputed.

" 1. **you;** or

" 2. any entity in which **you** have a financial interest . . . ."[2]

The policy defined the terms "**You**" or "**Your**" as:

"A. the entity named on the Declarations of this policy as the Named Insured;

"B. any of **your:**

" 1. partners, if **you** are a partnership;

". . . . . . . . . . . . . . . . . . . . . . . . . . .

" 3. brokers, agents, employees . . . ;

". . . . . . . . . . . . . . . . . . . . . . . . . . .

" but only while acting within the scope of their duties for **you.**"

2. *The 1995 Policy*

In 1995 Smith Kandal sought and obtained a policy from Continental (the 1995 policy), which provided the same basic coverages and the same relevant definitional language as the 1994 policy. The 1995 policy contained Exclusion O in a form slightly modified from the form in the 1994 policy.[3]

The 1995 policy also included the specially drafted Ventana Ranch exclusion, which evolved during negotiations for issuance of the 1995 policy. On January 4, 1995, Ms. Geehring, an employee of Continental's underwriter, and Ms. Oftedal-Jones, an employee of Smith Kandal's insurance broker, discussed the 1995 policy. Oftedal-Jones told Geehring that Kevin Smith (Smith), a partner of Smith Kandal, held an interest in Ventana Ranch, Ltd.,[4] and she asked whether Smith Kandal's sales of Ventana Ranch homes would be covered under the 1995 policy. Geehring opined that Smith Kandal's

---

[2]Exclusion O was subject to a limited exception not pertinent here.

[3]The modified Exclusion O in the 1995 policy added, as exceptions from its scope, the sale of a personal residence if the insured was not the listing or selling agent and the sale of property in which "**your** ownership interest is less than 10%."

[4]Smith and his wife jointly owned a 25 percent interest in Ventana Ranch, Ltd., which developed and sold homes. Although Smith Kandal's application for insurance in 1993 apparently disclosed that Smith owned a "minority interest" in a firm that developed single-family homes, that disclosure did not result in a specially drafted exclusion.

sales of Ventana Ranch homes would be excluded from coverage. Smith Kandal's insurance broker informed Smith of Geehring's opinion and subsequently faxed to Geehring Smith's request that Ventana Ranch be named as an additional insured or, alternatively, that the renewal premium be reduced.

On January 5 Geehring and Smith discussed the coverages to be provided by the 1995 policy concerning Ventana Ranch sales. Geehring concluded Ventana Ranch, Ltd., could not be named as an additional insured but assured Smith that "as long as employees are working under the scope of [Smith Kandal], they will be covered under the policy." Smith responded, indicating he wanted confirmation of "E & O coverage for my agents and for myself acting in the normal scope of duties of [Smith Kandal] in their capacity of selling homes under a standard listing agreement with Ventana Ranch. . . . We *do not* want coverage for E & O for Ventana Ranch, only for [Smith Kandal]." (Original italics.)

On January 9 Geehring wrote to Oftedal-Jones, advising that the originally quoted premium had been reduced and that Ventana Ranch "will be specifically excluded from coverage by endorsement." Oftedal-Jones forwarded the new quote and restrictions to Smith. Smith's written response to Oftedal-Jones accepted the coverage but stated Smith still wished to discuss coverage for Smith Kandal's activities relating to Ventana Ranch. Smith's letter explained that Smith Kandal had no financial interest in Ventana Ranch, that sales of Ventana Ranch properties by Smith Kandal had been handled by a full-time agent other than Smith under standard listing contracts, and that Smith did not understand why Smith Kandal would not be covered under the 1995 policy.

On January 26 Geehring and Oftedal-Jones again spoke about the Ventana Ranch issue, and Geehring's January 26 fax confirmed their discussions by stating: "Now, anybody dealing with Ventana Ranch or any homes that may be sold under Ventana Ranch will not be covered; however, the homes that are sold under [Smith Kandal] will be covered under the policy, and anybody selling homes for [Smith Kandal] will be covered."

Smith Kandal subsequently received the 1995 policy containing the Ventana Ranch exclusion, which provided: "In consideration of the premium charged, it is understood and agreed that this insurance does not apply to **claims** and/or **claims expenses** arising out of activities performed by or on behalf of Ventana Ranch."

B. *The Morgans' Claim*

In March 1995 the Morgans made a claim against Smith Kandal in the form of a draft complaint that named Smith Kandal, Elsa Benedict (an

employee of Smith Kandal), Smith and others as defendants. The claim asserted Smith Kandal acted as the Morgans' real estate broker in the purchase of seven homes as part of an Internal Revenue Code section 1031 tax-deferred exchange (the 1031 exchange). The seller of the homes was Ventana Ranch.[5] The claim alleged in part that the Morgans were damaged by the negligence of Smith Kandal and Elsa Benedict because: (1) the improper structuring of the 1031 exchange limited the amount of assets available to the Morgans for purchase of the homes; (2) the improper structuring of the transaction allowed loan proceeds rather than moneys from the sale of the exchange properties to be used to fund the purchase of the homes; and (3) the premature closing of escrow was without express authorization from the Morgans. The Morgans alleged they were injured by Smith Kandal's negligence because the Morgans lost the tax benefits of a properly structured 1031 exchange.

## C. *The Current Action*

In May 1995 Smith Kandal tendered defense of the Morgans' claim to Continental. Continental rejected the tender, citing Exclusion O and the Ventana Ranch exclusion. Smith Kandal then filed the present action seeking a judicial declaration that Continental was obligated to defend Smith Kandal against the Morgans' claim under the 1995 policy.[6]

Smith Kandal and Continental filed cross-motions for summary judgment. The trial court granted Continental's motion for summary judgment, and it denied Smith Kandal's motion for summary judgment, ruling that (1) Exclusion O barred coverage for the Morgans' claim because Smith owned an interest in Ventana Ranch, (2) the Ventana Ranch exclusion barred coverage for the Morgans' claim because the claim arose out of activities performed by or on behalf of Ventana Ranch, and (3) the 1994 policy had expired.

## II

### *Applicable Legal Principles*

A liability insurer owes a duty to defend its insured when the claim creates any potential for indemnity. (*Horace Mann Ins. Co. v. Barbara B.*

---

[5]On appeal, Continental asserts the undisputed facts show Smith Kandal represented both Ventana Ranch as sellers and the Morgans as buyers. However, the record below establishes only that Smith Kandal represented the Morgans as buyers and that Smith signed the contract on behalf of Ventana Ranch.

[6]Smith Kandal also sought a declaration that the 1994 policy remained in effect and that Continental was obligated to defend the Morgans' claim under the 1994 policy. Although Smith Kandal reasserts that claim on appeal, it is unnecessary to evaluate the claim because we conclude Continental was obligated to provide Smith Kandal a defense under the 1995 policy.

(1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured. (*Ibid.*)

The insurer is entitled to summary adjudication that no potential for indemnity exists and thus no duty to defend exists if the evidence establishes as a matter of law that there is no coverage. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 298 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy. (*Century Transit Systems, Inc.* v. *American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125-126 [49 Cal.Rptr.2d 567].)

■ In an action seeking declaratory relief on the issue of a duty to defend, different showings are required of the insured and the insurer. "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 300, original italics.) If the facts alleged by the third party or known to the insurer create any potential for indemnity under the policy, the insurer must provide a defense even though noncovered acts are also alleged by the third party action. (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1084.)

The trial court found that Exclusion O and the Ventana Ranch exclusion were clear and unambiguous and that the Morgans' claim was not covered because of those exclusions. ■ An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1467 [267 Cal.Rptr. 708].) Where the exclusion is clear, we will not rewrite the insurance contract to impose coverage where none was contemplated. (*Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 469 [27 Cal.Rptr.2d 476].) However, an exclusion or limitation on coverage must be clearly stated and will be strictly construed against the insurer. If an exclusion ambiguously lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage. (*Castro* v. *Fireman's Fund American Life Ins. Co.* (1988) 206 Cal.App.3d 1114, 1119 [253 Cal.Rptr. 833].)

An insurance policy, like all contracts, is to be interpreted to effectuate the mutual intent of the parties. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253].) Where possible, we look solely to the terms of the policy; the clear and explicit meaning of the policy terms, understood in their ordinary and popular sense, will govern our interpretation. (*Id.* at p. 822.) If the policy is ambiguous because it is reasonably susceptible to more than one interpretation, the ambiguity is construed in favor of coverage. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) Whether an exclusion is ambiguous and whether an insured has an objectively reasonable expectation of coverage under the insuring language are questions of law. (*Schrillo Co.* v. *Hartford Accident & Indemnity Co.* (1986) 181 Cal.App.3d 766, 775-776 [226 Cal.Rptr. 717].)

### III

### *Analysis*

#### A. *Exclusion O Does Not Negate the Potential for Coverage*

 Continental argues that Exclusion O precludes any potential for coverage for the Morgans' claim because the policy defined the term "you" to include Smith as a partner of Smith Kandal, and Exclusion O excludes coverage for claims arising from the sale of any property owned by "any entity in which **you** have a [greater than 10 percent] financial interest."

However, the policy is reasonably susceptible to a different interpretation. The term "you" defines those persons who are insured under the policy. In addition to Smith Kandal being the named insured, coverage is provided to Smith Kandal's partners, agents and employees, but only to the extent they acted within the scope of their duties to Smith Kandal. Smith is therefore defined as a "you" only to the extent he acted within the scope of his duties to Smith Kandal.

The insertion of the defined "you" into Exclusion O makes the exclusion reasonably susceptible to a construction that it applies only if the claim arose from the sale of property owned by "any entity in which [Smith Kandal, or Smith acting within the scope of his duties to Smith Kandal] ha[d] a [greater than 10 percent] financial interest." There is no suggestion Smith's ownership of an interest in Ventana Ranch was an act within the scope of his duties to Smith Kandal. Because Exclusion O is reasonably susceptible to this interpretation, we must resolve the ambiguity against the insurer and in favor of Smith Kandal's right to a defense even though other equally

reasonable constructions of the exclusion are possible. (*De May* v. *Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1137 [38 Cal.Rptr.2d 581]; *Castro* v. *Fireman's Fund American Life Ins. Co., supra,* 206 Cal.App.3d at p. 1119.)

The policy is reasonably susceptible to another interpretation that makes Exclusion O inapplicable to exclude coverage for the Morgans' claim. The Morgans' claim named three parties who potentially qualify as a "you" entitled to coverage: Smith Kandal, Elsa Benedict and Smith. ▮ The courts have recognized that when a policy covers multiple insureds and the insurer asserts that an exclusion precludes coverage, the fact the exclusion might apply to bar coverage for one of the insureds does not automatically preclude coverage for the other insureds; instead, each insured's right to coverage must be separately examined in the context of the specific language of the exclusionary clause. For example, in *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81 [286 P.2d 816] a liability policy covered (1) the named insured father and (2) his son as an additional insured relative residing in the father's household. The son started a fire that caused damage to school property and the father sought coverage. The insurer argued that an exclusion for destruction "caused intentionally by . . . the insured" referred to the class composed of all those covered by the policy so that an injury caused intentionally by one class member barred coverage for all members. (*Id.* at pp. 82-83.) The court rejected the argument and found coverage for the father, concluding that a policy extending coverage to multiple insureds creates several obligations and the exclusion must be applied severally to each insured to determine its effect. Because the father had not intentionally caused any damage the exclusion did not apply to him. (*Id.* at p. 84.)

Similarly, in *De May* v. *Interinsurance Exchange, supra,* 32 Cal.App.4th 1133 the definition of "you" in an automobile liability policy included "the insured[s] named in Item 1," who were Mr. De May and Ms. Davenport. De May injured Davenport while driving the automobile, and De May sought coverage when Davenport sued him. The insurer argued that the exclusion for "liability for . . . *bodily injury* to you" precluded coverage for Davenport's injuries because she was a "you" in the definitional section. (*Id.* at pp. 1135-1136, original italics.) The *De May* court inserted the definition of "you" into the exclusion to evaluate whether excluding liability for bodily injuries to the named insured barred coverage. The court noted the insurer could have inserted a plural term into the exclusion, barring coverage for injuries to "*an* insured" or "*any* insured," but the insurer instead relied on the

singular term *"the* insured."[7] The court concluded that, even if the insurer reasonably interpreted the term "you" to exclude bodily injury suffered by *any* insured, De May also reasonably interpreted the term "you" to exclude coverage for bodily injury suffered only by the insured against whom a claim had been made, and therefore the court construed the ambiguity in favor of coverage. (*De May* v. *Interinsurance Exchange, supra,* at pp. 1140-1141; accord, see *American States Ins. Co.* v. *Borbor by Borbor* (9th Cir. 1987) 826 F.2d 888, 894.)

■ The language of Exclusion O stating that Continental would not defend or pay for "any **claim** arising from . . . the sale . . . of property . . . owned by . . . **you** . . . or any entity in which **you** have a financial interest . . ." uses the term **"you"** in its singular form, which permits the reasonable interpretation that the exclusion is applied severally to each insured and is applicable only if the claim against the insured arises from the sale of property owned by the insured against whom the claim is made, rather than from the sale of property owned by another member of the group of insureds. This interpretation is buttressed by the fact Continental employed language recognizing and distinguishing among the multiple insureds[8] and describing circumstances under which the application of provisions of the policy to one of the insureds would be relevant to the other insured's protections.[9] The omission from Exclusion O of language distinguishing between insureds reinforces the reasonableness of a construction that the sale of property owned by one insured does not exclude coverage under Exclusion O for other insureds.

We conclude that although Exclusion O is susceptible to the interpretation urged by Continental, it is also reasonably susceptible to the interpretation

_____

[7]In contrast, when the exclusionary language uses terms which refer to the entire group of insureds, the courts have concluded that an exclusion applicable to any one of the insureds can bar coverage for all insureds. (See, e.g., *Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1360-1361 [1 Cal.Rptr.2d 360] [exclusion for bodily injury caused intentionally by *"an* insured" or *"any* insured" bars coverage for all insureds if intentional act exclusion is triggered by any member of group of insureds].) Although Continental argues on appeal that Exclusion O is linguistically distinguishable from the exclusions considered in *Arenson* or *De May* because Exclusion O applies to claims arising from property in which "an" or "any" insured owns an interest, neither the word "an" nor "any" qualifies the term "insured" in Exclusion O.

[8]The 1995 policy, in section V, paragraph K, stated: "If any of **you** for whom we make payment under this policy has rights to recover amounts from another, those rights are transferred to us to the extent of our payment."

[9]For example, in the "Limit of Liability" section of the 1995 policy (section III), paragraph A provides that the limit "applies as excess over any deductible amount, and regardless of the number of **you** who are insured under this policy," and paragraph F states that the "inclusion of one or more of **you** shall not operate to increase either the deductible or the limit of liability." ·

that the exclusion applies only if the claim arose from the sale of property owned by Smith acting within the scope of his duties to Smith Kandal, or that the exclusion is to be applied severally to each insured and is applicable only if the claim arises from the sale of property owned by the insured against whom the claim is made—in this case, Smith Kandal. Because we must resolve the ambiguity against the insurer and in favor of coverage (*De May* v. *Interinsurance Exchange, supra,* 32 Cal.App.4th at p. 1137) and either of the two interpretations not urged by Continental make Exclusion O inapplicable to coverage for the Morgans' claim against Smith Kandal, we conclude Exclusion O does not conclusively eliminate all potential for coverage and therefore does not support the trial court's order granting summary judgment in favor of Continental.

**B. *The Ventana Ranch Exclusion Does Not Conclusively Negate the Possibility of Coverage for Smith Kandal***

 The Ventana Ranch exclusion in the 1995 policy provides that coverage does not apply to claims "arising out of activities performed by or on behalf of Ventana Ranch." Although the Morgans' claim involved a transaction in which Ventana Ranch properties were the subject of the purchase agreement, the issue is whether Smith Kandal has any potential liability to the Morgans that would not "aris[e] out of activities performed . . . on behalf of Ventana Ranch."[10] To assess whether the Ventana Ranch exclusion may not apply to the Morgans' claim, we must examine the import of the exclusion's two key phrases: "arising out of" and "activities performed . . . on behalf of Ventana Ranch."

**1. *"Arising Out Of"***

Smith Kandal argues the term "arising out of" requires that the conduct excluded from coverage have a sequential and causal connection to the injury and that the excluded conduct be the dominating cause or the substantial factor in causing the injury. (*Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791].) From this premise, Smith Kandal argues the Morgans could potentially recover for an injury not predominately or substantially caused by the identity of the property purchased by

---

[10]The exclusion also included claims "arising out of activities performed by . . . Ventana Ranch." Although the Morgans' purchase agreement was signed by Smith for Ventana Ranch, and Smith's actions therefore might fall within the exclusion as activities performed *by* Ventana Ranch, the Morgans' claim against Smith Kandal alleges that Smith Kandal is liable for negligently performing its responsibilities and does not allege that Smith Kandal is vicariously liable for Ventana Ranch's activities. We therefore limit our evaluation to whether the Morgans stated any potentially covered claim within the exclusion for activities performed by Smith Kandal "on behalf of" Ventana Ranch.

the Morgans but rather caused by the negligent structuring of the 1031 exchange, the use of loan rather than sale proceeds and the premature closing of the escrow, none of which is related to the identity of the property.

■ The California courts generally have construed the term "arising out of" as having broader significance and connoting more than causation. For example, our Supreme Court has explained that the "arising out of the use" language in insuring clauses of automobile liability policies "has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123], original italics); however, the court further explained that there must be "[s]ome minimal causal connection" between the vehicle and the injury. (*Id.* at p. 100, fn. 7.) Other cases have equated "arising out of" with " '. . . origination, growth or flow from the event.' " (*Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 32 [108 Cal.Rptr. 737]; *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 704 [76 Cal.Rptr. 281].) One federal court, applying California law to determine the scope of an exclusionary clause and the key concept of "arising from" or "arising out of," stated: " ' "Arising out of" are words of much broader significance than "caused by". They are ordinarily understood to mean " 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' " or in short, "incident to, or having connection with" . . . .' " (*Continental Cas. Co.* v. *City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1080.)

■ Here, the Morgans' injury did flow from or was incident to and therefore arose out of a transaction involving Ventana Ranch homes rather than being caused by some " 'independent act, or intervening cause wholly disassociated from, independent of and remote from' " (*Truck Ins. Exch.* v. *Webb, supra,* 256 Cal.App.2d at p. 146) the Ventana Ranch homes. However, this conclusion does not end the analysis, because the "arising out of" clause does not modify the phrase "transactions involving Ventana Ranch homes." Instead, the "arising out of" clause modifies the phrase "activities performed on behalf of Ventana Ranch," and this latter language is key to determining the potential for coverage. (*Pacific Indem. Co.* v. *Truck Ins. Exch., supra,* 270 Cal.App.2d at pp. 702-704 [court decides scope of coverage for insurance "arising out of . . . use" of vehicle by focusing on meaning of "use" rather than "arising out of"]; *Smith* v. *Travelers Indemnity Co.* (1973) 32 Cal.App.3d 1010, 1015-1017 [108 Cal.Rptr. 643] [same]; *Underwriters at Lloyd's of London* v. *Cordova Airlines* (9th Cir. 1960) 283 F.2d 659, 664-665 [court decides scope of exclusion for loss "arising from

. . . *any flying* [activity requiring a CAB waiver]" by focusing on whether insured was engaged in a flight requiring a CAB (Civil Aeronautics Board) waiver]; *Niagara Fire Ins.* v. *Pepicelli et al. & Youngs, P.C.* (3d Cir. 1987) 821 F.2d 216, 220-221 [court decides scope of exclusion for claims " 'aris-[ing] out of any insured's activities as an officer or director of any' " business other than named insured by focusing on whether claims were rooted in insured's activities as officer or director of uninsured business rather than on meaning of "arising out of"].) We therefore examine whether the Morgans' claim potentially involves recovery for an injury not caused by Smith Kandal's activities performed on behalf of Ventana Ranch.

### 2. *Activities Performed on Behalf of Ventana Ranch*

Because the Ventana Ranch exclusion specifies that the policy would not cover claims against Smith Kandal for activities performed on behalf of Ventana Ranch, the duty to defend exists if the Morgans potentially could recover against Smith Kandal based on activities Smith Kandal did not perform on behalf of Ventana Ranch. Smith Kandal argues the Morgans' claim asserted three potential errors or omissions which did not involve activities performed by Smith Kandal on behalf of Ventana Ranch. The Morgans alleged Smith Kandal's acts included (1) negligently structuring the 1031 exchange by limiting the amount of assets available to the Morgans for the exchange, (2) negligently utilizing loan proceeds rather than moneys from the sale of the exchange properties to fund the 1031 exchange, and (3) negligently closing escrow prematurely.[11]

We conclude these allegations of negligence give rise to a potential for coverage because the phrase "activities performed on behalf of Ventana Ranch" is reasonably susceptible to the interpretation that, although claims against Smith Kandal based on malfeasance as Ventana Ranch's broker are excluded, claims against Smith Kandal for actions it performs on behalf of persons other than Ventana Ranch are not excluded even though the property

---

[11]Continental argues that the particular negligent acts and omissions alleged by the Morgans' claim are irrelevant and misleading because the Morgans were not injured by any particular negligent act until escrow closed on the Ventana Ranch homes and therefore the Morgans' claim necessarily arises from the sale of Ventana Ranch homes. However, the exclusion does not state that claims arising from the sale of Ventana Ranch homes are excluded, but states only that claims arising from activities performed on behalf of Ventana Ranch are excluded. Because the policy excludes only claims arising from activities performed on behalf of Ventana Ranch, the particular allegations of negligence must be evaluated to determine whether they qualify as an activity performed on behalf of Ventana Ranch. (Accord, *Niagara Fire Ins.* v. *Pepicelli et al. & Youngs, P.C., supra,* 821 F.2d at pp. 220-221.)

involved in the transaction is a Ventana Ranch home. This construction gives meaning to the term "performed on behalf of," because the exclusion focuses not on the identity of the property involved in the transaction but on the identity of the client on whose behalf Smith Kandal worked in the transaction.

Continental argues that even if Smith Kandal's acts in structuring and closing the 1031 exchange were activities performed on behalf of the Morgans, the sale benefited Ventana Ranch and therefore the activities were also "on behalf of" Ventana Ranch. We do not believe that the exclusionary language, when given its ordinary and popular meaning (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822 [clear and explicit meaning of the policy terms understood in their ordinary and popular sense govern interpretation of policy]), is reasonably susceptible to Continental's interpretation because a broker who assists his client to purchase a property is not ordinarily considered to be acting "on behalf of" the seller even though every such transaction confers some incidental benefit on the seller. More importantly, even were the exclusion reasonably susceptible to the interpretation urged by Continental, it is equally susceptible to the interpretation that Smith Kandal's actions are excluded from coverage only when the challenged actions are performed by Smith Kandal acting as broker for and on behalf of Ventana Ranch.

The interpretation of the Ventana Ranch exclusion Smith Kandal urges is reinforced by the communications among the parties during their original discussion of the Ventana Ranch exclusion. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 443 [91 Cal.Rptr. 6, 476 P.2d 406].) When Geehring and Smith discussed the coverages provided by the policy, Geehring concluded that Ventana Ranch, Ltd., could not be named as an additional insured, but also reassured Smith in her January 6 fax that "as long as employees are working under the scope of [Smith Kandal], they will be covered under the policy." Smith responded that he wanted confirmation of "E & O coverage for my agents and for myself acting in the normal scope of duties of [Smith Kandal] in their capacity of selling homes under a standard listing agreement with Ventana Ranch. . . . We *do not* want coverage for E & O for Ventana Ranch, only for [Smith Kandal]." (Original italics.) After further discussions, Geehring explained the Ventana Ranch exclusion by stating: "Now anybody dealing with Ventana Ranch or any homes that may be sold under Ventana Ranch will not be covered; *however, the homes that are sold under [Smith Kandal] will be covered under the policy, and anybody selling homes for [Smith Kandal] will be covered.*" (Italics added.)

These communications lend support to the reasonable interpretation that Smith Kandal would not be covered in its capacity as selling broker acting on behalf of Ventana Ranch, but agents acting in other capacities would remain covered under the policy.

The court in *Niagara Fire Ins.* v. *Pepicelli et al. & Youngs, P.C., supra,* 821 F.2d 216, evaluating a similar exclusion, also concluded the exclusion would not apply because the particular allegations of negligence did not depend on the excluded conduct. In *Niagara,* World of Tires, a company owned by Attorney Pepicelli and of which he was an officer and director, agreed to purchase Perma Tread and obtained a fire insurance policy on Perma Tread's plant. After fire destroyed the plant, Pepicelli's law firm represented Perma Tread and World of Tires to collect the insurance proceeds. Perma Tread subsequently sued the law firm for negligently handling the fire claim. The malpractice insurer for the law firm refused coverage, based on an exclusion in the legal malpractice policy of claims arising out of "any insured's activities as officer or director of" a business other than the named insured. The court concluded that coverage was available to the law firm because relevancy lay in the character of the specific legal claims not in the factual background. Because Perma Tread's malpractice claims were based on the violation of duties the law firm owed to Perma Tread and were unrelated to Pepicelli's activities on behalf of World of Tires, the court concluded the exclusion did not apply. (*Id.* at pp. 218-220.) Similarly, the Morgans' claim asserts Smith Kandal was negligent as the Morgans' broker by structuring the 1031 exchange in a manner that did not maximize the funds available for the purchase, by using loan proceeds to fund the purchase, and by prematurely closing escrow, rather than being negligent in the activities Smith Kandal may have performed on behalf of Ventana Ranch.

The Morgans potentially could recover against Smith Kandal by proving that the acts performed on the Morgans' behalf were negligent without proof the negligent conduct was also designed or intended to benefit or be on behalf of Ventana Ranch. Because this potential exists, Continental has a duty to provide Smith Kandal a defense regardless of whether the Ventana Ranch exclusion will ultimately provide grounds for Continental to refuse to indemnify Smith Kandal. (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at pp. 1084-1085.)

## DISPOSITION

The judgment of the trial court is reversed with directions to enter judgment in favor of Smith Kandal, declaring Continental is obligated to

provide a defense to Smith Kandal for the Morgans' claim. Smith Kandal shall recover costs on appeal.

Kremer, P. J., and McIntyre, J., concurred.