Filed 10/21/15  Solis v. Paraiso Tropical CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EVELYN OSORIO SOLIS,<br>　　　Plaintiff and Respondent,<br>v.<br>PARAISO TROPICAL, INC.,<br>　　　Defendant;<br>TOPA INSURANCE COMPANY,<br>　　　Intervener and Appellant. | E056230<br><br>(Super.Ct.No. INC085655)<br><br>OPINION |
| TOPA INSURANCE COMPANY,<br>　　　Plaintiff and Respondent,<br>v.<br>EVELYN OSORIO SOLIS,<br>　　　Defendant and Appellant. | E060487<br><br>(Super.Ct.No. INC1102911) |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp and

John G. Evans, Judges.  Affirmed.

Law Offices of Michael R. Kaiser, Michael R. Kaiser and Nicole R. Cieslinski for

Intervener and Appellant Topa Insurance Company.

1

Law Offices of Lionel Ciro Sapetto, L. Ciro Sapetto and Robert D. Resner for Plaintiff and Respondent and for Defendant and Appellant Evelyn Osorio Solis.

Selman Breitman, Alan B. Yuter and Rachel E. Hobbs for Plaintiff and Respondent Topa Insurance Company.

Defendant Paraiso Tropical, Inc., a suspended California Corporation, appeals through intervener Topa Insurance Company (hereafter sometimes Topa), from a personal injury judgment in favor of plaintiff Evelyn Osorio Solis.[1] (*Solis v. Paraiso Tropical*, *Inc*., case No. E056230.) Paraiso Tropical, Inc., contends that there is no substantial evidence that its conduct was a substantial factor in causing plaintiff's injuries. Plaintiff asserts in her appeal that the trial court erred when it refused to give the jury a separate verdict form on plaintiff's cause of action based on public nuisance.

While the personal injury action was pending, Topa filed an action seeking a declaration that it had no obligation to defend or indemnify Paraiso Tropical, Inc., under the business insurance it provided to Paraiso Tropical, Inc. (*Topa Insurance Co. v. Solis*, case No. E060487.) It contended that the policy did not cover plaintiff's injuries, because the policy excluded bodily injury losses resulting from the use of a motor vehicle in

---

[1] We granted Topa Insurance Company's unopposed motion to amend the notice of appeal filed by Paraiso Tropical, Inc., to reflect the insurance company's status as an intervener.

Paraiso Tropical, Inc., was the sole defendant at trial. Before trial, former defendants Rita Montano, Alicia Belmarez and Richard Gomez settled with plaintiff and with Leticia Perales, who was also a plaintiff. It appears that summary judgment was granted in favor of Ricardo Gomez and other corporate officers and/or shareholders before the trial. Leticia Perales is not a party to this appeal.

2

connection with the business. After entry of judgment in case No. E056230, the trial court entered summary judgment for Topa. Solis appeals.

We consolidated the two cases for purposes of argument and decision. We conclude that, contrary to Paraiso Tropical, Inc.'s contention, the record supports the conclusion that its negligence was a substantial factor in plaintiff's injuries. We therefore affirm the personal injury judgment. However, because we conclude that plaintiff's injury is excluded from coverage under the business liability insurance policy, we will also affirm the summary judgment in favor of Topa.

<u>CASE NO. E056230</u>

BACKGROUND

Sixteen-year-old Evelyn Osorio Solis (hereafter plaintiff or Solis) was rendered quadriplegic when a vehicle driven by Rita Montano and registered to Alicia Belmarez overturned. Solis, who was not wearing a seatbelt, was ejected from the vehicle. Leticia Perales and Richard Gomez were also ejected from the vehicle and suffered serious injuries.[2] The accident occurred around 3:00 a.m. on July 28, 2007. On the evening of July 27, plaintiff and several other young women had gone to Tequilaz, a nightclub in Indio. Tequilaz, which is owned by defendant, operates on Friday or Saturday nights at Paraiso Tropical, a restaurant also owned and operated by defendant. On weekends, the restaurant closes at 10:00 p.m. and is transformed into two nightclubs: Paraiso Tropical, which provides traditional Mexican entertainment, is open to patrons 21 years old or

_____

[2] Gomez's injuries left him with severe memory impairment. He was unable to recall the events of that evening.

3

older, and Tequilaz, which provides music popular with younger people, is open to patrons 18 years old or older.[3]  Both venues served alcohol.

Multiple witnesses testified that they and friends of theirs were admitted to Tequilaz despite being under the age of 18.  Rosanna Castaneda testified that she and several other girls were hired by Richard Gomez at the age of 15 or 16 to admit customers to the club and to dance and make sure people were having a good time.  They were told to dress "cute."  Gomez took her shopping and bought her sexy clothes to wear at the club.  She understood that he wanted the girls to wear sexy clothing to attract male customers.  Tequilaz also had "ladies' nights," when girls would dance for money.  The sexiest dancer got a prize.  Many of the girls who participated were less than 18 years old.  Tequilaz used photographs of some of the girls to publicize the club.

Paraiso Tropical was originally a restaurant owed by Richard Gomez's parents, Ricardo Gomez and Alicia Belmarez.  In 1986, they incorporated the business.  They opened the Paraiso Tropical nightclub in 2002 and opened Tequilaz in 2006.  Ricardo, Alicia and Richard were officers and directors of the corporation.  Richard "helped" with security and at some point took over running Tequilaz.  One of his roles was to find ways to attract customers.  Both he and his brother, Jerry, hired disc jockeys and bands to play at Tequilaz.  Many witnesses understood that Richard Gomez was the owner or manager

---

[3]  City of Indio Code of Ordinances, section 113.18, provides in pertinent part that "[n]o persons conducting any entertainment subject to the provisions of this chapter shall:  [¶]  (A)  Permit or allow any minor under the age of 18 years at or inside an entertainment site, while entertainment is taking place, unless accompanied by a parent or guardian."  Section 113.18 applies to "[e]very form of live entertainment."  (Indio Code of Ordinances, § 113.01.)

of Tequilaz. His mother, Alicia Belmarez, testified that Richard Gomez was involved in all aspects of the family business.

On the date of the accident, Richard Gomez arranged to drive several young women to Tequilaz. The understanding was that Gomez would drive them there and then drive them home. Gomez, driving a Ford Explorer registered to his mother, Alicia Belmarez, picked up plaintiff, Leticia Perales, Juana (or Juanita) Cruz, Rita Montano, Cristal Montano, Zulema Smith and Mary Smith and drove them to the club. None of the young women were asked for identification at the club.[4] They went in and sat at booths. Gomez provided Leticia and Juana with alcoholic beverages. Rita Montano and the Smith sisters were given a bucket of Corona beers by a customer who wanted to dance with Rita and Zulema. Gomez did not socialize with any of the young women. Juana Cruz and Leticia Perales left the club before the others and went to a party at a home in Indio. At closing time, the rest of the group got into the Ford Explorer. Gomez asked them to go with him for a pool party, either at his home or at a motel. Cristal Montano wanted to go home, so she was dropped off first. Two other girls who were not part of the original group were also taken home. After that, Gomez allowed Rita Montano to drive. They went next to pick up Leticia and Juana from the party they had attended. Perales expected to be taken home, and they were also taking Mary Smith home before going on to the pool party. Rita Montano did not have a driver's license but had some

---

[4] On the date of the accident, Leticia Perales and Juanita Cruz were 19 years old. Mary Smith was 16, and her sister Zulema Smith was 17. Rita Montano was 17. Cristal Montano was about 16.

driving experience. While driving on the freeway, Montano lost control of the vehicle.[5]

It rolled over several times. Montano's blood-alcohol test following the accident showed

that she had no alcohol in her system.

The jury found plaintiff 45 percent liable for her injuries. It found Rita Montano

45 percent liable and found defendant 10 percent liable. It awarded plaintiff $8,612,000

in damages. Judgment was entered against defendant in the amount of $4,241,000.[6]

LEGAL ANALYSIS

DEFENDANT'S APPEAL

DEFENDANT'S BUSINESS ACTIVITIES WERE A SUBSTANTIAL FACTOR

IN PLAINTIFF'S INJURIES

Defendant contends that there is no substantial evidence to support the verdict

because there is no evidence that its conduct was a substantial factor in plaintiff's injuries

under either of the two theories plaintiff relied upon at trial. Defendant characterizes

plaintiff's two theories as (1) that defendant's negligence in permitting minors to enter

Tequilaz was a substantial factor in plaintiff's injuries and (2) that Richard Gomez was

negligent in transporting plaintiff because he allowed an unlicensed driver to drive the

vehicle while transporting the girls to and from Tequilaz for business purposes.

---

[5] Montano and Mary Smith Morales at the time of trial testified that the driver of a small white car aggressively followed and then clipped the SUV, causing Montano to lose control of the SUV. The jury apparently rejected their testimony, finding that the driver of the white vehicle was not negligent.

[6] We do not understand why defendant was ordered to pay nearly 50 percent of the damages, when it was found only 10 percent liable. However, defendant has not raised any issue pertaining to the apportionment of the damages.

We need not address defendant's contentions concerning the negligent entrustment theory. That theory was alleged in the complaint, but Solis dismissed her cause of action for negligent entrustment before trial. Perales also abandoned that theory. Accordingly, it was not submitted to the jury on behalf of either plaintiff.

Contrary to defendant's other contention, however, plaintiff's second theory is both legally tenable and supported by substantial evidence. Plaintiff does appear to assert, as defendant contends, that defendant's practice of serving alcohol to minors and admitting minors to the club and using them in various unsavory ways to foster its business directly caused her injuries. She does not, however, explain how these practices could possibly have caused her injuries, and of course, they did not. Alcohol was not a factor in the accident, and plaintiff was not injured on the premises. However, plaintiff's actual theory, as was better explained at oral argument than in plaintiff's briefing, was that defendant's practice of getting underage girls to come to the club in order to entice male customers and thus sell more food and alcohol was a substantial factor in causing plaintiff's injuries because it set in motion a chain of events that culminated in the accident. This chain of events included Gomez's acts in transporting plaintiff to and from the club, and the fact that Montano was driving and operated the vehicle negligently is the final link in that chain. In the trial court, plaintiff characterized this course of conduct as negligence, as well as a public nuisance. The trial court accepted that characterization and instructed the jury that if it found that defendant's violation of the ordinance prohibiting the presence of unaccompanied minors under the age of 18 at a

7

place where entertainment is taking place was a substantial factor in plaintiff's injuries, it must find defendant negligent. The jury did find that defendant was negligent.

"A defendant's negligence is considered a cause in fact if it is '"[a] substantial factor in causing harm,"' which means it is '"more than a remote or trivial factor."' [Citation.]" (*Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 371-372 (*Pedeferri*).) "'Conduct can be considered a substantial factor in bringing about harm if it "has created a force or series of forces which are in continuous and active operation up to the time of the harm" [citation], or stated another way, "the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another" [citation].' [Citation.]" (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1093.) Here, the evidence, which we have discussed above, overwhelmingly supports plaintiff's theory that defendant used underage girls to foster its business, and defendant does not contend otherwise. Defendant contends, however, that it is not liable for plaintiff's injuries because there is no substantial evidence that Gomez was acting on its behalf in any capacity when the accident occurred.

In reviewing a claim that there is insufficient evidence to support a verdict, we review the record to determine whether there is any substantial evidence, contradicted or uncontradicted, to support the verdict. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, abrogated by statute on another point as noted in *DeBerard Properties*, *Ltd. v. Lim* (1999) 20 Cal.4th 659, 668-669.) If there is substantial evidence which supports the disputed finding, the judgment will be upheld even though substantial evidence to the contrary also exists and the trier of fact might have reached a different conclusion had it

believed other evidence.  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Substantial evidence is evidence that a reasonable person "'might accept as adequate to

support a conclusion'" (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644), or evidence

"that is reasonable, credible and of solid value."  (*Roddenberry v. Roddenberry* (1996) 44

Cal.App.4th 634, 651.)

Here, it was necessary for the jury to find that Gomez was acting on defendant's

behalf in some capacity when the accident occurred in order to sustain the chain of

causation from defendant's negligent business practices to the accident.[7]  The trial court

actually instructed the jury that Gomez was defendant's employee, and substantial

evidence supports the conclusion that Gomez was an employee of defendant and was

acting within the scope of his employment on behalf of the business when the accident

occurred.  His mother, Alicia Belmarez, testified that Richard was involved in most

aspects of the business, although she also denied that he worked at the club.  Gomez's

father, Ricardo Gomez, testified that Gomez helped with security and that he helped

"bring people" into the club, i.e., helped to generate interest in the club and generate sales

of food and alcohol.  He also testified that Richard took over running Tequilaz at some

point.  Gomez was also an officer and director of the corporation, but the functions his

father described are not those of an officer or director but of an employee.  Accordingly,

---

[7] The trial court instructed the jury that defendant could be liable for Gomez's "negligence" if Gomez was acting in the course and scope of his duties as defendant's agent or employee at the time of the accident.  However, because plaintiff dismissed her claim for negligent entrustment of the vehicle, the case was not submitted to the jury on any theory based on Gomez's negligence.

substantial evidence supports the conclusion that with respect to the day-to-day functions of the club, Gomez was an employee. Substantial evidence also supports the conclusion that Gomez was acting within the scope of his responsibilities for the business when he brought plaintiff and the others to the club. Defendant is correct that there is no evidence that Gomez regularly drove young girls to the club and took them home. Nevertheless, it is undisputed that he did so on this occasion. The conclusion that he did so for business purposes is further supported by the evidence that Gomez did not socialize with plaintiff or the others once they arrived at the club. Rather, he paid very little attention to them. A rational trier of fact could readily conclude from this evidence that Gomez was acting on behalf of the business and not for his own unrelated purposes in providing transportation to and from the club. And, substantial evidence supports the conclusion that Gomez was still acting in that capacity when the accident occurred: Even though Gomez planned to take plaintiff and some of the other young women to a private party rather than taking them directly home, they were actually en route to take Leticia Perales and Mary Smith Morales home before going on to that party when the accident occurred. Thus, he had not completed his work-related activities when the accident occurred.

Accordingly, there is no question that if Gomez had been driving and had negligently caused the accident, defendant would be liable for plaintiff's injuries under a theory of respondeat superior. (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1421 [employer is vicariously liable for torts of employee committed within scope of employment].) Neither party expressly addresses the issue of defendant's liability in light of the fact that Gomez was *not* driving when the accident

10

occurred.[8] However, unless there was a superseding cause which broke the chain of causation, defendant is liable for plaintiff's injuries under the continuous force or series of forces theory described in *Mayes v. Bryan*, *supra*, 139 Cal.App.4th at page 1093.

Whether a third party's negligence constitutes a superseding cause is a question of law which we review de novo. (*Pedeferri*, *supra*, 216 Cal.App.4th at p. 372.) A cause is superseding only when the third party's intervening negligence is ""'highly unusual or extraordinary'" [citation], and "'far beyond the risk the original tortfeasor should have foreseen'" [citation]. In making this assessment, we are to make a "'more focused, fact-specific" inquiry that takes into account a particular plaintiff's injuries and the particular defendant's conduct. [Citations.]' [Citation.]" (*Pedeferri*, *supra*, 216 Cal.App.4th at p. 373.) Here, even if Gomez had been found negligent in allowing Montano to drive, his doing so was neither highly unusual nor extraordinary, nor far beyond the risk that defendant should have foreseen in allowing Gomez to transport underage girls to and from the nightclub. And, it is not uncommon for drivers to be negligent. Accordingly, neither Gomez's act of allowing Montano to drive nor Montano's negligent driving was a superseding cause.

Because the verdict finding defendant partially liable for plaintiff's injuries is supported both legally and factually, we will affirm the judgment.

---

[8] Both plaintiffs argued at trial that defendant could be liable on a respondeat superior theory because Gomez, who was acting as defendant's agent, made Montano his agent and, therefore, defendant's agent, for purposes of completing the transportation of the girls he had brought to the club for defendant's benefit. The case was not submitted to the jury on that theory, however; neither the instructions nor the special verdict refer in any way to a finding that Montano was acting as defendant's agent.

11

PLAINTIFF'S APPEAL

THE TRIAL COURT DID NOT ERR IN REFUSING TO ALLOW THE JURY TO

RETURN A VERDICT ON PLAINTIFF'S NUISANCE CAUSE OF ACTION

As we have discussed above, plaintiff based her claim in part on the theory that defendant's business practices constituted a nuisance and that the nuisance was a substantial factor in causing her injuries. Her complaint pled nuisance and negligence separately. Plaintiff states that she asked the trial court to give the jury separate verdict sheets for negligence and nuisance. She does not provide a citation to the record to support that assertion. Our review of the record shows that there was discussion between the court and plaintiff's attorney as to whether separate verdicts were appropriate, but that counsel acquiesced without objection in the court's decision to give the jury a single verdict form for negligence and nuisance. Accordingly, any contention that separate verdicts on negligence and nuisance should have been given is forfeited.

CASE NO. E060487

THE BUSINESS LIABILITY INSURANCE POLICY'S

AUTOMOBILE EXCLUSION APPLIES

A business liability policy issued by plaintiff and respondent Topa Insurance Company to Paraiso Tropical, Inc. (Topa), was in effect on the date of the accident which resulted in the injuries to defendant and appellant Solis. The policy covered bodily injury claims arising out of the corporation's business operations. It provided that Topa had the "right and duty" to defend any lawsuit seeking damages for bodily injury and the duty to indemnify the corporation and its officers, directors, and employees for any amounts the

12

insured was required to pay.  The policy excluded coverage for bodily injuries arising out of the use of an automobile under specified circumstances.

While the personal injury suit was pending, Topa filed this action seeking a declaration that because Solis's injuries arose from the use of an automobile within the meaning of the language of the policy, it had no duty to defend the suit or to indemnify its insured.  After judgment was entered in favor of Solis and against Paraiso Tropical, Inc., Topa moved for summary judgment or summary adjudication.  The trial court found that the automobile exclusion applied and granted the motion.  Judgment was entered in favor of Topa as to all defendants.  Solis appealed.

We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.  (*Smith Kandal Real Estate v. Continental Cas. Co.* (1998) 67 Cal.App.4th 406, 414.)  Here, the underlying facts were established at trial in the companion case and are not subject to dispute.  (We discuss the pertinent facts below.)  The sole issue in this appeal is whether the automobile exclusion applies to those facts.  Solis asserts two reasons why it does not apply:

*Independent Concurrent Causes*

Solis contends that Paraiso Tropical's negligence in admitting underage girls to its club and the automobile accident are independent concurrent causes of her injuries.  Solis contends that because one of the two causes of her injury does not involve the use of an automobile and was covered under the business liability policy, the automobile exclusion

13

does not apply. She relies on a line of cases beginning with *State Farm Mutual Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 103 (*Partridge*).

In *Partridge*, the California Supreme Court held that an occurrence may be covered under both an automobile policy and a homeowner's or business liability policy that excludes coverage for injuries arising out of the use of a vehicle if "the liability of the insured arises from his non-auto-related conduct [which] exists independently of any 'use' of his car." (*Partridge*, *supra*, 10 Cal.3d at p. 103; see also *Belmonte v. Employers Ins. Co.* (2000) 83 Cal.App.4th 430, 433 [*Partridge* analysis applies in context of business liability insurance].) In *Partridge*, the insured was hunting from his car using a gun he had modified to create a "hair trigger" action. After he drove the car off road in pursuit of a rabbit, the car hit a bump and the gun fired, hitting and paralyzing a passenger, who sued the insured. (*Partridge*, at pp. 97-98.) Partridge's homeowner's liability policy covered liability resulting from the gun modification, but not injuries arising out of the use of a motor vehicle. The Supreme Court concluded that where two independent risks jointly caused the injury, the insurer is liable so long as one of the risks is covered by the policy. (*Id.* at pp. 102-103.) The court found that "although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. . . . [I]nasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability." (*Id.* at p. 103.)

14

Solis contends that in this case, as in *Partridge*, Paraiso Tropical's negligent operation of its business is an independent cause of her injury. We disagree.[9] Following *Partridge*, courts have "'made it clear that [*Partridge*'s] holding only applies to "multiple causes [of injury] that operated totally independently of one another."'" (*Farmers Ins. Exchange v. Superior Court* (2013) 220 Cal.App.4th 1199, 1210.) Where the injury involved "'no instrumentality other than'" the vehicle itself, and "'there would have been no accident without the use or' operation of the vehicle," the automobile exclusion does apply. (*Ibid.*, quoting *Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524, 530.) In this case, even though Paraiso Tropical's negligent business practices set the chain of events in motion, those practices were not an independent cause of plaintiff's injuries. Rather, the sole instrumentality that caused Solis's injuries was the automobile. Accordingly, the concurrent independent causes theory does not apply.

*Whether Gomez or Belmarez Was an "Insured" Within the Meaning of the Exclusion Clause*

Solis contends that the automobile exclusion does not apply because neither Belmarez nor Gomez was an insured, as defined by the policy and as required for the exclusion to apply. The policy states that "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others [of] any . . . 'auto' . . . owned or operated by or rented or loaned to any insured" is excluded from coverage.

---

[9] Because we reject Solis's argument that *Partridge* applies, we need not address Topa's contention that the ongoing negligent operation of Paraiso Tropical's business is not an "occurrence" within the meaning of the liability policy.

15

The policy definition of "insured" includes executive officers, but only with respect to their duties as officers, and employees "other than" executive officers, for acts within the scope of their employment. Here, the vehicle was owned by Belmarez and lent to Gomez, who then entrusted it to Montano. Unless Belmarez was acting in her capacity as an officer of the corporation when she lent the vehicle to Gomez or Gomez was an employee acting within the scope of his employment when he entrusted it to Montano, Solis contends, the exclusion does not apply. And, she contends, neither Belmarez nor Gomez was an insured as defined in the policy.

In her opening brief, Solis contended that Gomez was not an employee of Paraiso Tropical, but was rather an officer and director, and that he was not an insured because he was not acting in his capacity as an officer when he transported her to and from the club. As we have discussed above, however, the court instructed the jury that Gomez was an employee of Paraiso Tropical, and the special verdict established that Gomez was acting within the course and scope of his duties as an employee when the accident occurred. Consequently, this contention lacks merit.

In her petition for rehearing, Solis denies that she asserted that Gomez was not an employee. Rather, she states, her contention is that Gomez can be both an employee, for the purpose of determining liability, and an executive officer, for purposes of the exclusionary clause. She notes that Gomez acted in dual capacities for Paraiso Tropical, i.e., that he was an officer and director of the corporation and also acted as an employee in the day-to-day operation of the club. She contends that because language in an insurance policy is to be construed broadly in favor of coverage, we must interpret the

16

policy to provide that for purposes of the exclusion clause, Gomez is not an insured because he was "an employee other than [an] executive officer" and was not acting in his capacity as an executive officer in connection with his use of the automobile.

An insurance policy is to be interpreted, if possible, in favor of coverage. "If an exclusion ambiguously lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage." (*Smith Kandal Real Estate v. Continental Casualty Co*., *supra*, 67 Cal.App.4th at p. 414.) Whether an ambiguity exists is a question of law. (*Ibid*.) Here, there is no ambiguity. The exclusionary clause applies both to executive officers acting in their official capacity and to employees, other than executive officers, acting within the scope of their employment. There is no provision in the policy that indicates that a person cannot be both an executive officer when acting in that capacity, and an employee other than an executive officer when acting within the scope of his or her nonexecutive employment, and we cannot reasonably construe the exclusion clause to so provide.

Solis also argues that Belmarez was not an insured for purposes of the automobile exclusion clause because she was not acting in furtherance of her duties as an officer or director when she lent the automobile to Gomez. However, although the exclusion clause applies to a vehicle lent or entrusted *by* an insured, it also applies to a vehicle lent or entrusted *to* an insured by anyone, not just by an insured. If someone other than Belmarez had lent the vehicle to Gomez, the exclusionary clause would have applied because Gomez was an insured, as defined by the policy. This brings the incident within the unambiguous wording of the automobile exclusion clause.

17

Accordingly, the trial court correctly granted the motion for summary judgment.

Under a separate heading, Solis preemptively argues that the trial court correctly found that the policy's "expected and intended" exclusion does not apply. She contends that defendant may not now argue that the exclusion does apply because it did not file a cross-appeal. Defendant responds that it is entitled to raise any argument asserting that the judgment was correct on any ground, even one not relied on by the trial court. Having rejected Solis's arguments and having found that the trial court correctly granted summary judgment, however, we need not address alternative grounds for affirming the judgment.

DISPOSITION

The judgment in *Solis v. Parasio Tropical*, Superior Court of Riverside County case No. INC085655 (E056230), is affirmed. The judgment in *Topa Insurance Company v. Solis*, Superior Court of Riverside County case No. INC1102911 (E060487), is also affirmed.

The parties are to bear their own costs on appeal in both cases.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

18