1 Cal.Rptr.3d 464 (2003)
110 Cal.App.4th 96
BAROCO WEST, INC. et al., Plaintiffs and Appellants,
v.
SCOTTSDALE INSURANCE COMPANY, Defendant and Respondent.
No. E032011.
Court of Appeal, Fourth District, Division Two.
June 9, 2003.
Rehearing Denied June 30, 2003.
Review Denied August 20, 2003.
*466 John K. Saur, Laguna Hills, for Plaintiffs and Appellants.
Selman Breitman, Sheryl W. Leichenger, Eldon S. Edson, Los Angeles, and Won M. Park for Defendant and Respondent.

*465 OPINION
GAUT, J.

1. Introduction

Baroco West, Inc. (hereafter Baroco), a construction company, sued its insurance carrier, Scottsdale Insurance Company, for failing to defend it in a homeowners' action for negligent construction of a private residence. Based on the terms of policy, including the policy period and the exclusionary provisions, the trial court granted Scottsdale's motion for summary judgment. On appeal, Baroco claims the trial court erred in granting the motion for summary judgment because Scottsdale failed to establish that there was no potential for coverage.
We conclude that, based on the policy period, the relevant policy provisions, the homeowners' complaint, and Baroco's admissions, there was no potential for coverage under the policy and, hence, no duty to defend in the third-party action. We affirm the trial court's judgment.

2. Factual and Procedural History

In April or May of 1995, Baroco (dba Highpoint Construction) began construction of a private residence for Gary T. Charlebois and Lori L. Charlebois. On July 1, 1998, the Charleboises brought an action against Baroco for various causes of action, including breach of contract and negligence. In their complaint, the Charleboises alleged that, although the construction contract provided that the work would be complete within 255 days, as of July 1996, about when the Charleboises moved into their home, the work was not completed as required under the contract. The Charleboises also alleged that Baroco performed the work in a negligent and careless manner.
From the period between July 22, 1994, to July 22,1995, Baroco was covered under *467 a commercial liability insurance policy issued by Scottsdale. Baroco did not renew the policy and the policy expired on July 22, 1995.
In response to the Charleboises' action, Baroco tendered its request for defense and indemnification. On June 9, 2000, Scottsdale sent Baroco a letter denying its request.
Before receiving Scottsdale's letter, on May 1, 2000, Baroco filed its first amended complaint against Scottsdale and other defendants for breach of contract, breach of contract of implied covenant of good faith and fair dealing, and declaratory relief. Scottsdale filed a motion for summary judgment on the ground that there was no potential for coverage under the insurance policy because the construction was not complete and the home was not put to its intended use before the policy expired. The trial court granted summary judgment.

3. Discussion

Baroco claims the trial court erred in granting summary judgment because Scottsdale failed to show that there was no potential for coverage under the policy and, thus, it was entitled to judgment as a matter of law.

A. Standard of Review

In reviewing the trial court's decision to grant summary judgment, we independently review the entire record, considering all the nonexcluded evidence presented in the parties' moving and opposition papers.[1] While we strictly construe the defendant's supporting documents, we liberally construe the plaintiffs documents, resolving all doubts in the plaintiffs favor as to the propriety of summary judgment.[2] We determine whether the defendant has negated an essential element of the plaintiffs cause of action, or established the nonexistence of any triable issue of material fact, such that the defendant would be entitled to judgment as a matter of law.[3]
Particularly, when the case turns on the interpretation or application of the terms of an insurance policy, we review the terms of the policy to determine whether the insurer owed the insured a duty to defend.[4] A duty to defend arises when the claim creates any potential for indemnity or coverage.[5] "The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured. [Citation.]"[6]

B. The Insurance Policy

Scottsdale's policy includes the following provisions:
Section ICoverages
*468 "1. Insuring agreement.
"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages. We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result....
"[¶] ... [¶]
"b. This insurance applies to `bodily injury' and `property damage' only if:
"[¶] ... [¶]
"(2) The `bodily injury' or `property damage' occurs during the policy period.
"[¶] ... [¶]
"2: Exclusions.
"This insurance does not apply to:
"[¶] ... [¶]
"j. Damage to Property
"`Property damage' to:
"[¶]... [¶]
"(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations; or
"(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it.
"[¶] ... [¶]
"Paragraph (6) of this exclusion does not apply to `property damage' included in the `products-completed operations hazard'."
Section VDefinitions
"14.a. `Products-completed operations hazard' includes all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work' except:
"(1) Products that are still in your physical possession; or
"(2) Work that has not yet been completed or abandoned.
"b. `Your work' will be deemed completed at the earliest of the following times:
"(1) When all of the work called for in your contract has been completed.
"(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
"(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
"Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."
"(15) "Property damage" means:
"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
"b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the `occurrence' that caused it."
C. Analysis
Baroco claims that Scottsdale was required to defend in the Charleboises' action because the alleged damage constituted property damage under section V, paragraph 15, resulting in or from the loss of use of the property under the same provision, constituted abandoned or completed *469 operations under section V, paragraph 14.a., and "a multitude of other potentially covered claims."
In determining whether a third party complaint invokes the duty to defend and a potential for coverage under a particular policy, we first consider the language of the contract to ascertain its plain meaning.[7] As with the interpretation of any other contract, the interpretation of an insurance policy attempts to give effect to the parties' intent, which is often inferred from the written provisions.[8] If the insurer becomes aware of facts giving rise to the potential for coverage under the insurance policy, the insurer has a duty to defend irrespective of whether the insurer ultimately will bear the duty to indemnify.[9] Nevertheless, "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. [Citation.]"[10]
After receiving a tender of defense, the insurer satisfies its duty to investigate by considering the complaint and the terms of the policy.[11] Although extrinsic facts may also give rise to a duty to defend, such facts must be known at the time of tender and must reveal a potential for liability.[12]
An insurer bears no duty to defend when the facts underlying a claim arise after the policy period expires.[13] A complete factual basis for liability must exist during the policy period.[14] An insurer "cannot be required to be clairvoyant as to the infinite possible future permutations of facts, fundamental to the very existence of coverage but not in existence during the policy period...."[15] "[I]n an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. [Citation.]"[16] In such circumstances, an insurer does not have a duty to defend *470 where an insured has neglected its corresponding duty to pay premiums.[17]
In its letter response to Baroco's tender of defense, Scottsdale stated: "Because your work of the Charlebois project continued well beyond the expiration date of this policy, there can have been no completed operations and thus no damages within the policy, this claim is excluded from coverage under the above provision of the policy...."
As did the trial court below, we conclude that Scottsdale established the absence of any potential for coverage.[18] According to section I(2)(j) of the contract, the policy excludes damage to the property caused during ongoing construction operations performed by the contractor or subcontractor. Considered together with section I(1)(a), the policy applies to completed work or operations. Completed work, as defined in section V(14)(b)(3), includes not only entire projects, but also partial projects that have been put to their intended use by any person other than the contractor or subcontractor.
Baroco contends that, under the completed operations provisions, "there is virtually an unlimited number of circumstances which continue to present factual situations which potentially create coverage." Baroco refers to its formal request for tender of defense, in which it mentioned a few of the alleged defects, including that the large concrete driveway was cracked and slipping. Baroco argues that the driveway could have been used by the Charleboises after its completion, but before the completion of the entire project. Baroco contends, therefore, that the driveway could have been complete and put to its intended use as specified in section V(14)(b)(3).
Baroco's contention, however, is based not on facts, but mere speculation. An insured may not rely on speculation to manufacture coverage.[19] The facts indicate that Baroco began construction in April or May of 1995, the policy expired in July of 1995, and the Charleboises moved in approximately one year later. According to Baroco, the driveway was completed within a few months and the Charleboises put it to its intended use over a year before they moved into their new house. Even if still within the realm of possibility, Baroco's argument regarding completed or abandoned operations is nothing more than speculation. "Assertions of potential coverage which are based entirely on speculation do not give rise to a duty to defend."[20]
Furthermore, Baroco admitted that: "as of July 23, 1995, [Baroco] had not COMPLETED OPERATIONS at the construction project located at 5365 Mt. Springs Ranch Rd., La Verne, California 91750." Baroco also stated that it completed operations on the property approximately in July of 1996. Therefore, based on the terms of the contract, as well as Baroco's admissions, there was no potential for coverage under the completed operations provisions of the policy.
*471 In addition to contending that coverage existed under the completed operations provisions, Baroco also contends that coverage existed under the loss of use provisions. Under section V(15)(a), covered property damage includes "[p]hysical injury to tangible property, including all resulting loss of use of that property." Baroco argues that Scottsdale had a duty to defend it in the Charleboises' lawsuit because the Charleboises made allegations indicating that they were deprived of the use of the property because Baroco failed to deliver the finished home within 255 days.
This contention is equally without merit. As a practical matter, the Charleboises were not deprived of any use of the property within the policy period. The Charleboises and Baroco contracted to construct the house on April 1, 1995. The policy expired on July 22, 1995. The contract provided that the construction was to be completed within 255 days. Thus, the policy expired long before the Charleboises were entitled to the finished product under the contract. Consequently, they did not experience any loss of any use within the policy period.
Baroco further contends that, even if the loss of use did not occur during the policy period, so long as the physical injury causing the eventual loss of use occurred during the policy period would be sufficient under the terms of the policy. Baroco's own admission, however, defeats this contention. In response to Scottsdale's special interrogatories, Baroco stated that there was no physical injury to, or loss of use of, any tangible property before the policy expired. Thus, Baroco's admission establishes that the loss of use provisions did not provide any basis for coverage.
In any event, the loss of use provisions must be read in the context of the policy as a whole.[21] Under the Scottsdale policy, although property damage includes any loss of use resulting from physical injury to tangible property, the policy excludes property damage caused during ongoing construction operations. Without damage to property or to a particular part of real property on which Baroco was not performing work,[22] there was no property damage of any kind covered under the policy.
We conclude that, based on the policy period, the relevant policy provisions, the third party complaint, and Baroco's admissions, there was no potential for coverage under the policy and, hence, no duty to defend. In the absence of any duty, there can be no cause of action for either breach of contract or breach of the implied covenant of good faith and fair dealing.[23] Therefore, the trial court properly found that Scottsdale was entitled to judgment as a matter of law as to all of Baroco's causes of action.

*472 4. Disposition

We affirm the trial court's judgment. Scottsdale shall recover its costs on appeal.
We concur: RAMIREZ, P.J., and WARD, J.
NOTES
[1] Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 334, 100 Cal.Rptr.2d 352, 8 P.3d 1089.
[2] Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 500, 63 Cal.Rptr.2d 291, 936 P.2d 70.
[3] See Code of Civil Procedure section 437c, subdivision (c); Guz v. Bechtel National, Inc., supra, 24 Cal.4th at page 334, 100 Cal.Rptr.2d 352, 8 P.3d 1089.
[4] See Smith Kandal Real Estate v. Continental Casualty Co. (1998) 67 Cal.App.4th 406, 414, 79 Cal.Rptr.2d 52.
[5] Smith Kandal Real Estate v. Continental Casualty Co., supra, 67 Cal.App.4th at pages 413-414, 79 Cal.Rptr.2d 52.
[6] Smith Kandal Real Estate v. Continental Casualty Co., supra, 67 Cal.App.4th at page 414, 79 Cal.Rptr.2d 52.
[7] See Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.
[8] See Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at page 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; Buxbaum v. Aetna Life & Casualty Co. (2002) 103 Cal.App.4th 434, 442, 126 Cal.Rptr.2d 682.
[9] See Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at page 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.
[10] Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at page 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.
[11] American Internat. Bank v. Fidelity & Deposit Co. (1996) 49 Cal.App.4th 1558, 1571, 57 Cal.Rptr.2d 567.
[12] See Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 297-298, 24 Cal. Rptr.2d 467, 861 P.2d 1153; Swain v. California Casualty Ins. Co. (2002) 99 Cal.App.4th 1, 8, 120 Cal.Rptr.2d 808; Northland Ins. Co. v. Briones (2000) 81 Cal.App.4th 796, 806, 97 Cal.Rptr.2d 127; Hurley Construction Co. v. State Farm Fire & Casualty Co. (1992) 10 Cal.App.4th 533, 538, 12 Cal.Rptr.2d 629.
[13] See Buena Vista Mines, Inc. v. Industrial Indemnity Co. (2001) 87 Cal.App.4th 482, 487, 104 Cal.Rptr.2d 557.
[14] See FMC Corp. v. Plaisted & Companies (1998) 61 Cal.App.4th 1132, 1154-1155, 72 Cal.Rptr.2d 467.
[15] FMC Corp. v. Plaisted & Companies, supra, 61 Cal.App.4th at page 1155, 72 Cal.Rptr.2d 467; see also Ringler Associates Inc. v. Maryland Casualty Co. (2000) 80 Cal.App.4th 1165, 96 Cal.Rptr.2d 136.
[16] Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 59, 70 Cal. Rptr.2d 118, 948 P.2d 909.
[17] Aerojet-General Corp. v. Transport Indemnity Co., supra, 17 Cal.4th at page 59, 70 Cal.Rptr.2d 118, 948 P.2d 909.
[18] See Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at page 300, 24 Cal. Rptr.2d 467, 861 P.2d 1153; Cunningham v. Universal Underwriters (2002) 98 Cal.App.4th 1141, 1147, 120 Cal.Rptr.2d 162.
[19] Hurley Construction Co. v. State Farm Fire & Casualty Co., supra, 10 Cal.App.4th at page 538, 12 Cal.Rptr.2d 629.
[20] Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority (1994) 31 Cal. App.4th 617, 633, 37 Cal.Rptr.2d 106.
[21] See Nissel v. Certain Underwriters at Lloyd's of London (1998) 62 Cal.App.4th 1103, 1111, 73 Cal.Rptr.2d 174.
[22] But see Roger H. Proulx & Co. v. Crest-Liners, Inc. (2002) 98 Cal.App.4th 182, 203, 119 Cal.Rptr.2d 442 (involving facts indicating possible damage to property other than tank liner on which contractor was performing work).
[23] See Buena Vista Mines, Inc. v. Industrial Indemnity Co., supra, 87 Cal.App.4th at page 488, 104 Cal.Rptr.2d 557, quoting Waller v. Truck Ins. Exchange, Inc.. supra, 11 Cal.4th at page 36, 44 Cal.Rptr.2d 370, 900 P.2d 619; San Diego Housing Com. v. Industrial Indemnity Co. (1998) 68 Cal.App.4th 526, 544, 80 Cal.Rptr.2d 393.