[No. B193543. Second Dist., Div. Three. Apr. 28, 2008.]

MONTICELLO INSURANCE COMPANY, Plaintiff and Appellant, v. ESSEX INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Caron, Constants & Wilson, Wilson & Ryan and Sherry L. Pantages for Plaintiff and Appellant.

Murchison & Cumming and Bryan M. Weiss for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant Monticello Insurance Company (Monticello) appeals a stipulated judgment in favor of defendant and respondent Essex Insurance Company (Essex) in an action for equitable contribution.

In this action, Monticello seeks contribution from Essex for defense costs to defend mutual insured Blumenfeld Construction Company (Blumenfeld), a general contractor, against construction defect claims in an underlying action. Blumenfeld was a named insured under the Monticello policy and an additional insured under an Essex policy. Dana Drywall, Blumenfeld's drywall subcontractor, was the named insured under the Essex policy.

The essential issue presented is whether Essex had a duty to defend Blumenfeld in the underlying action.

We conclude Essex did not owe Blumenfeld a defense because neither the pleadings nor the extrinsic evidence in the underlying action revealed a possibility that the homeowners' claims against Blumenfeld might be covered by the drywall subcontractor's policy. Therefore, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Events preceding the instant action.*

Blumenfeld was the general contractor on a project involving the construction of the Goldman residence in Tarzana. Dana Drywall was the drywall

subcontractor on the project. The notice of completion indicates the project was completed on April 10, 1995.

Monticello insured Blumenfeld as a named insured under its policy effective December 1, 1993, to December 1, 1994. This policy was not renewed. Monticello issued no other policy to Blumenfeld.

Essex issued a liability policy to Dana Drywall, effective September 5, 1995, to September 5, 1996. The Essex policy contained an additional insured endorsement. The endorsement was conditional, making Blumenfeld "an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy. [¶] It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured . . . ."[1]

On July 8, 1999, the Goldmans filed the underlying action, a suit against Blumenfeld and others for construction defects in the project. (Dana Drywall was not named as a defendant in that action.) Monticello defended Blumenfeld in the underlying action subject to a reservation of rights.

On October 25, 2000, Blumenfeld filed a cross-complaint against Dana Drywall and others, alleging they were responsible for the damages at the project.

Essex defended its named insured, Dana Drywall, in the underlying action.

On July 12, 2001, Blumenfeld tendered defense of the underlying action to Essex, pursuant to the additional insured endorsement in the Essex policy. On November 18, 2003, Essex declined to defend Blumenfeld.

Monticello incurred $641,498.59 in defense costs to defend Blumenfeld in the underlying action and obtained reimbursement from the insurer of another subcontractor in the sum of $78,963.90, leaving it with $562,534.69 in unreimbursed defense costs.

The underlying action settled. Monticello contributed $87,500 on behalf of Blumenfeld to a global settlement of $1.2 million. The insurers of Dana Drywall, including Essex, collectively contributed $6,000 to the settlement on behalf of Dana Drywall.

---

[1] The Essex policy contained an exclusion which precluded coverage for the insured's defective work. Thus, coverage was limited to consequential property damage or resultant property damage, that is to say, damage to work other than the drywall caused by the defective work of the insured.

2. *The instant action for equitable contribution.*

On December 16, 2004, Monticello filed the instant action against Essex, seeking equitable contribution from Essex of Essex's share of all sums paid by Monticello to defend Blumenfeld in the underlying action.

 a. *Monticello's motion for summary judgment/summary adjudication.*

On December 16, 2005, Monticello filed a motion for summary judgment and/or summary adjudication. Two of the issues as to which Monticello sought summary adjudication were: (1) Essex had a duty to defend Blumenfeld in the underlying action; and (2) Essex had a duty to contribute with Monticello towards Blumenfeld's defense.[2]

Monticello contended Essex had a duty to defend Blumenfeld in the underlying action because the complaint in the underlying action, as well as the defect list in that action (Defect List), contained allegations of consequential damage caused by the drywall work, including damage to the paint, custom interior finishes, and stucco of the Goldman residence. In other words, the allegedly defective drywall damaged the paint, custom interior finishes and stucco at the residence. Thus, there were sufficient allegations that Dana Drywall's work damaged the products or work of others (i.e., that Dana Drywall's work caused consequential damage) and thus met the Essex policy's definition of property damage.

 b. *Essex's opposition papers.*

In opposition, Essex contended: Monticello had the burden to establish Blumenfeld's status as an insured under the Essex policy. In order to sustain that burden, Monticello was required to establish that Blumenfeld's liability in the underlying action rested on Dana Drywall's negligence, *and* that the damages sought against Blumenfeld for Dana Drywall's negligence were covered under the Essex policy. Because the cost to repair an insured's own defective work is not covered under the Essex policy, Monticello had the

---

[2] Monticello also sought summary adjudication that it had no duty to defend Blumenfeld in the underlying action, on the grounds that *Baroco West, Inc. v. Scottsdale Ins. Co.* (2003) 110 Cal.App.4th 96 [1 Cal.Rptr.3d 464], which was decided during the course of the underlying action, held that, where a general contractor completes its work after expiration of a particular insurance policy, the insurer has no duty to defend the general contractor in subsequent litigation alleging construction defects. Monticello asserted that, because the Goldman residence was completed after expiration of the Monticello policy, it had no obligation to defend Blumenfeld and was entitled to 100 percent reimbursement of its unreimbursed defense costs by Essex.

burden to show the damages against Blumenfeld for Dana Drywall's negligence related to something other than Dana Drywall's work, i.e., damage to other property as a result of Dana Drywall's allegedly defective work. Nothing in the complaint alleged such damage. Monticello's separate statement purported to establish the fact of "resultant property damage," by asserting the defectively installed drywall " 'damaged the paint, custom interior finishes and stucco of the Goldman residence.' " Notwithstanding those assertions, there was no evidence of resultant property damage. Rather, at best, there were references to defectively installed drywall and the work and expense required to remedy that problem. In the absence of any evidence of resultant property damage, Monticello was unable to sustain its burden to show Blumenfeld was entitled to a defense as an additional insured under the Essex policy.

 c. *Trial court's order denying Monticello's motion for summary judgment/summary adjudication.*

After taking the matter under submission, on March 7, 2006, the trial court issued an order denying Monticello's motion for summary judgment and/or summary adjudication of duty issues, ruling as follows:

"[Monticello] has failed to meet its burden . . . because it has failed to show the Essex policy provides coverage for the claims against Blumenfeld. [Monticello] basically contends that because the duty to defend is greater than the duty to indemnify, then Essex has a duty to reimburse. [Monticello] relies on the well-settled law that if any potential for coverage exists, the duty to defend is triggered unless the insurer is able to demonstrate the absence of any potential for coverage. [Citation.] [¶] The problem with [Monticello's] argument is that [Monticello] is not seeking to have Essex participate in an ongoing defense. Instead, [Monticello] has already provided the insured a defense, *and the duty to be determined in the instant case is whether or not Essex must reimburse Monticello for the costs of an already completed defense.*

"In *Buss v. Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766], the court held that an insurer, who defends under a reservation of rights, may seek reimbursement from its insured for the defense of claims for which there was no coverage. In the instant case, [Monticello] states that it has decided not to seek reimbursement from its insured, rather, to seek reimbursement from Essex. [Monticello] submits no evidence whatsoever as to whether or not Essex was required to indemnify because the work performed by Dana Drywall resulted in property damage other than to the insured's own work. Instead, [Monticello] argues . . . that:

" 'Essex confuses the additional insured endorsement's [potential] limitation on "indemnity" coverage with its obligation to provide a full and complete defense to Blumenfeld. Although Essex's duty to indemnify Blumenfeld may have been limited to the "negligent act or omissions" of Dana Drywall, Essex owed a duty to defend Blumenfeld for both covered [claims from Dana Drywall's negligence] and uncovered claims [claims resulting from the independent negligence of Blumenfeld] in the Underlying Action. As this action involves only a claim for reimbursement of defense costs, the endorsement's potential limitation on indemnity is not relevant.'

"This is simply an incorrect statement of law. *In order for Monticello to obtain reimbursement from another insurance company, Monticello must establish that the other insurer owed a duty to indemnify.* Equitable contribution assumes that the competing policy covers the loss at issue, and gives an insurer the right to require those insurers who are obligated to provide coverage to contribute the payment. See, *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296]. In the instant case, Monticello is seeking to pass the duty of paying defense costs to Essex, without first establishing that Essex was ever obligated to cover the injuries alleged in the underlying action." (Italics added.)

### d. *The stipulated judgment.*

Monticello disagreed with the trial court's ruling, contending that, in order to obtain equitable contribution for defense costs, all Monticello had to do was to prove the *potential* for consequential damage arising from Dana Drywall's work.

In order to enable Monticello to seek immediate appellate review following the denial of its motion for summary judgment/summary adjudication, Monticello and Essex entered into a stipulation for judgment, which states in relevant part: "WHEREAS, the court's required standard for equitable contribution towards defense fees and costs is a critical, outcome determinative, issue in the action as Monticello anticipates that it will not be able to prove by a preponderance of the evidence at trial that Dana Drywall's work actually caused consequential property damage," and "[i]n order to save the time and expense of a trial on both the parties and the court, and to seek immediate appeal of critical issues in this action," Monticello and Essex stipulated that judgment be entered for Essex.

Pursuant to the stipulation, the judgment in favor of Essex "is based solely on the following grounds: [¶] a. Because the Underlying Action concluded, Monticello must prove that there was actual coverage for liability resulting from Dana Drywall's work; [¶] b. In order to obtain contribution towards

defense fees and costs from Essex, Monticello is required to prove that the work of Dana Drywall actually damaged the work of others (i.e., it caused consequential damage); [¶] c. Monticello cannot meet its burden of proof that Dana Drywall's work actually caused damage to the work of others (i.e., caused consequential damage); [¶] d. Monticello's contention that it need only prove a potential for coverage in order to obtain equitable contribution towards defense fees and costs from Essex is incorrect; [¶] e. Whether Essex owed a defense to Blumenfeld in the Underlying Action is not relevant; and [¶] f. Whether Blumenfeld [*sic*—Monticello] owed a defense obligation to Blumenfeld in the Underlying Action is not relevant."[3]

On September 1, 2006, Monticello filed a timely notice of appeal from the stipulated judgment entered July 17, 2006.

## CONTENTIONS

Monticello contends the trial court applied the wrong standard in determining whether Monticello was entitled to equitable contribution; the trial court erroneously ruled that because Monticello sought equitable contribution from Essex after the underlying action was concluded, rather than while it was pending, Monticello was required to prove there was actual coverage for the liability resulting from Dana Drywall's work instead of merely a potential for coverage; and Monticello was entitled to equitable contribution from Essex because Essex had a duty to defend Blumenfeld in the underlying action. Monticello seeks reversal of the order denying its motion for summary adjudication and remand to the trial court to determine the appropriate amount of reimbursement of defense costs from Essex to Monticello.

## DISCUSSION

1. *The stipulated judgment is appealable.*

As a preliminary matter, Monticello's consent to judgment, which was given merely to facilitate an immediate appeal following an adverse determination on a critical issue, does not bar standing to appeal. *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*) covers the point.

In that case—a wrongful death action against a drug manufacturer—because the appellate court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959 [38 Cal.Rptr.2d 298] "appeared to be dispositive,

---

[3] Appended to the stipulation for judgment is a stipulation of facts. This court's factual summary herein is based largely on the stipulated facts.

the Norgarts and Upjohn entered into an agreement, on the Norgarts' proposal, to resolve the proceedings in the superior court in Upjohn's favor following the superior court's tentative ruling on its summary judgment motion against the operative complaint, in order . . . to hasten review in the Court of Appeal." (*Norgart, supra,* 21 Cal.4th at pp. 393–394; accord, *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1299 [4 Cal.Rptr.3d 629] [in stipulating to judgment "parties agree[d] that plaintiffs [respondents] will not raise appealability as an issue"].)

In *Norgart*, the plaintiffs "entered into the stipulation relating to the ruling in question *in order to complain thereof before the Court of Appeal.* . . . [T]hey were doing more, and nothing less, than ' " 'endeavoring to make the best of a bad situation for which [they were] not responsible' " ' [citation]— namely, the unfavorable result at trial that would have been compelled by *Bristol-Myers Squibb.*" (*Norgart, supra,* 21 Cal.4th at p. 403.) Thus, in *Norgart*, the plaintiffs stipulated to judgment in order to proceed with the appeal because, given the state of the law, it would have been an idle act by the plaintiffs to proceed to trial.

Similarly, in this case, it would have been an idle act by Monticello to proceed to trial following the denial of its motion for summary judgment/summary adjudication, because Monticello "anticipate[d] that it [would] not be able to prove by a preponderance of the evidence at trial that Dana Drywall's work actually caused consequential property damage . . . ." Therefore, the parties properly stipulated to judgment in order to obtain immediate appellate review of the trial court's critical and outcome-determinative ruling relating to the standard for equitable contribution toward defense fees and costs.

Accordingly, Monticello's consent to judgment is no impediment to the appeal.

2. *Standard of appellate review.*

The parties disagree as to the standard of appellate review.

Monticello contends denial of a motion for summary judgment or summary adjudication is subject to de novo review, and that review of the judgment herein presents a question of law, involving the application of equitable contribution principles to stipulated facts.

Essex asserts that, because the appeal is from a final judgment, this court's review is pursuant to the substantial evidence standard. According to Essex, the issue is whether Monticello satisfied its burden of proof to establish

Blumenfeld's status as an additional insured under the Essex policy, a burden that could only be met by evidence that Blumenfeld was being held liable for the negligent work of Dana Drywall *and* that the damages being sought were covered damages under the Essex policy. The trial court held there were insufficient facts to satisfy that burden, and Essex asserts this court is required to give due deference to that finding by the trial court.

Essex's position is meritless because this appeal is not from a judgment after trial. Rather, the matter concluded below in a stipulated judgment following the denial of Monticello's motion for summary adjudication. Therefore the substantial evidence test plays no part in this appeal.

The issue before this court is the legal standard for equitable contribution and whether, on the facts presented, the trial court properly denied Monticello's motion for summary judgment and/or summary adjudication on the issue of Monticello's entitlement to equitable contribution. *Our review is de novo.* As stated in *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94], an order denying summary adjudication is subject to independent review because "[i]t resolves a pure question of law [citation], namely, whether there is any triable issue as to any material fact and, if not, whether the moving party is entitled to adjudication in his favor as a matter of law [citation]."

Thus, "after examining the facts before the trial judge on a summary judgment motion, we independently determine their effect as a matter of law. [Citation.] . . . [T]he trial court's stated reasons for its ruling do not bind us. We review the ruling, not its rationale. [Citation.]" (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 730–731 [284 Cal.Rptr. 687].)

We now turn to the merits of the appeal.

3. *General principles.*

a. *Equitable contribution toward defense costs.*

█ Equitable contribution is "the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or

indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1293, fn. omitted.)

### b. *Defense standard.*

██ An insurer must defend any suit that *potentially* seeks damages within the coverage of the policy. (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) " 'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]' [Citation.]" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

Here, Monticello is entitled to contribution from Essex for defense costs if it establishes a potential for coverage for Blumenfeld under Essex's policy.[4]

### 4. *Essex had no duty to defend Blumenfeld; Monticello failed to show a potential for coverage for Blumenfeld under Dana Drywall's policy with Essex.*

Monticello asserts the pleadings in the underlying action, as well as the defect and repair list, contained allegations of consequential property damage

---

[4] The additional insured endorsement in the policy issued by Essex to Dana Drywall made Blumenfeld, the general contractor, "an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy. [¶] *It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured . . . .*" (Italics added.) Thus, under the terms of the Essex policy, Blumenfeld's right to coverage or a defense appears to be conditioned on the existence of coverage for Dana Drywall. The italicized portion of the additional insured endorsement presents an issue as to whether Blumenfeld's status as an "additional insured" requires *actual* coverage of a claim against Dana Drywall, as opposed to only a *potential* for coverage to be present. It is unnecessary to resolve that issue here because, as explained later in the opinion, Monticello failed to show even a potential for coverage for Blumenfeld under the Essex policy. Therefore, for purposes of this opinion, we assume, without actually deciding, that Monticello was only required to show there was a potential for coverage under the Essex policy.

potentially caused by the drywall work, including damage to the paint, custom interior finishes and stucco of the Goldman residence, so as to trigger Essex's obligation to defend Blumenfeld. We address these issues seriatim.

 a. *Pertinent allegations of the Goldmans' complaint against Blumenfeld did not reveal a possibility to Essex that the action against Blumenfeld might be covered by Dana Drywall's policy.*

Monticello cites the allegations in the underlying complaint by the Goldmans that there was "[e]xcessive cracking in the interior and exterior of the Goldman property" (par. 18) and that there was "[p]remature failure of painted surfaces" and "[w]ater damage to structure" (par. 19). Monticello's reliance on the underlying complaint is unavailing.

*The word "drywall" is not even mentioned in the underlying complaint.* There was no allegation therein that the "excessive cracking" was in any way related to the work of Dana Drywall or to any drywall installation. "Cracking" and "drywall" are not synonymous. Essex was not required to speculate that the "excessive cracking" might be attributed to the work of Dana Drywall. (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272] [an insured may not trigger duty to defend by speculating about extraneous facts regarding potential liability].)

As for the allegations in paragraph 19 of the complaint relating to "premature failure of painted surfaces" and "water damage to structure," the complaint did not allege those damages were in any way related to drywall work. Rather, the complaint alleged those damages were the result of various defects, including improper grading, inadequate drainage, and excessive cracking in the interior and exterior of the Goldman property. Essex was not required to speculate that the "premature failure of painted surfaces" and "water damage to structure" may have resulted from the work of Dana Drywall. Therefore, we conclude the complaint in the underlying action did not reveal a possibility to Essex that the action against Blumenfeld might be covered by Dana Drywall's policy. Given the Goldmans' allegations in the underlying complaint, Essex had no duty to defend Blumenfeld in the underlying action.

 b. *The Defect List is unavailing to Monticello because it was not provided to Essex during the pendency of the underlying action.*

As noted, facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.

*(Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at pp. 295–296.) In an attempt to show a potential for coverage under the Essex policy, Monticello relies extensively on the "List of Construction Deficiencies and Recommendations for Remediation, As of February 21, 2003," i.e., the Defect List, prepared for the Goldmans' counsel by Acclaim Builders, which was retained to identify construction deficiencies and to provide an outline of recommended repairs.

On the motion for summary judgment, the Defect List was introduced into evidence by Kevin J. McConville who, in his declaration, did not indicate when it was provided to Essex. To the extent Monticello asserted that Essex's improper refusal to defend was based on its receipt of the Defect List, Monticello had the burden, *as a plaintiff seeking summary judgment,* to establish Essex actually had the Defect List at a point in time when it could have decided to participate in the defense of Blumenfeld in the underlying action. We conclude the Defect List plays no role in our duty to defend analysis because Monticello failed to establish said document was tendered to Essex during the pendency of the underlying action.

The record reflects the following chronology. On July 12, 2001, Blumenfeld tendered its defense in the underlying action to Essex's coverage counsel, Arlow. On July 23, 2001, Arlow responded, requesting additional information, including "whatever information and documents you have evidencing damage as a result of Dana Drywall's work and/or product and when that damage occurred." The Defect List was compiled 19 months later, on February 21, 2003. Shortly before the scheduled trial date of November 3, 2003, the underlying action settled.

On November 12, 2003, counsel for Monticello, Pantages, wrote to Essex asking for a "definitive response" to Monticello's request for contribution. On November 18, 2003, Essex denied Monticello's request for contribution, based in part on the "lack of any evidence that there is damage to Dana Drywall's work or that its work caused damage to any other property."

On May 18, 2004, Monticello's counsel responded to the November 18, 2003 letter and provided the Defect List. On December 16, 2004, Monticello sued Essex for contribution.

In sum, Essex was never provided with the Defect List at any time while it still had the opportunity to participate in the defense of Blumenfeld in the underlying action. The record reflects the Defect List was not presented to Essex until May 18, 2004—15 months after said document was created and six months after the underlying action had settled. Essex had no opportunity to consider the Defect List in conjunction with Monticello's demand that

Essex contribute to the defense of Blumenfeld. Therefore, Monticello's reliance on the Defect List at this juncture is unavailing.

Monticello's arguments to the contrary are unpersuasive. Monticello contends it was "entitled to presume" that Essex had a copy of the Defect List by virtue of its defense of Dana Drywall on the Blumenfeld cross-complaint in the underlying action. Monticello also asserts a later version of the Defect List "was discussed" during the deposition of expert witness Mark Kovacevich on August 27, 28 and September 26, 2003. However, the discussion of a later version of the Defect List with a deponent does not equate with a tender of the pertinent Defect List to Essex. Monticello also relies on the stipulated facts for stipulated judgment, which includes the Defect List among the stipulated facts. However, in the stipulation, Essex merely stipulated to the contents of the Defect List—the stipulation did not call for Essex to stipulate as to the date the Defect List was provided to it.

In sum, in the absence of any evidence the February 21, 2003 Defect List was presented to Essex at any time during the pendency of the underlying action, Monticello's reliance on said Defect List on its motion for summary judgment/summary adjudication in the instant action for equitable contribution must be rejected.

 c. *Blumenfeld's cross-complaint against Dana Drywall did not create a duty on the part of Essex to defend Blumenfeld against the Goldmans' complaint.*

In addition to the complaint in the underlying action and the Defect List, Monticello relies on the cross-complaint filed by Blumenfeld against Dana Drywall. According to Monticello, because Blumenfeld's cross-complaint specifically alleged negligence against Dana Drywall, the cross-complaint triggered Essex's obligation to defend Blumenfeld in the main action. The argument lacks merit.

In essence, the cross-complaint against Dana Drywall and other subcontractors alleges that Blumenfeld's liability, if any, "is the result of the acts or negligence on the part of said Cross-Defendants . . . in having performed negligent work under their respective contracts with [Blumenfeld]."

Blumenfeld's allegation of damages against Dana Drywall, damages which were not asserted against Blumenfeld in the main action, do not serve to establish coverage for the main action. The cross-complaint for indemnity does nothing to alter the fact that the Goldmans, the plaintiffs in the main action, *the action for which a defense is sought*, did not allege covered damages against Dana Drywall. Blumenfeld's cross-complaint for indemnity cannot substitute for the absence of such allegations by the Goldmans.

## CONCLUSION

 Neither the Goldmans' complaint against Blumenfeld, nor the Defect List, nor Blumenfeld's cross-complaint against Dana Drywall, triggered a duty in Essex to defend Blumenfeld pursuant to the additional insured endorsement. Therefore, the trial court properly denied Monticello's motion for summary judgment or summary adjudication.

## DISPOSITION

The judgment is affirmed. Essex shall recover its costs on appeal.

Croskey, J., and Kitching, J., concurred.