IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| BROUGHTON LAW GROUP, INC., P.S., a Washington corporation, | ) ) ) | No. 72566-1-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| FIRE INSURANCE EXCHANGE, a California company and a resident of Washington state, | ) ) ) ) | UNPUBLISHED OPINION FILED: October 26, 2015 |
| Respondent. | ) ) ) | |

VERELLEN, J. — Terry Parks sued attorney Janyce Fink for legal malpractice, and Fink counterclaimed for the tort of outrage. Parks tendered the outrage counterclaim to his homeowner's insurer, Fire Insurance Exchange (FIE). FIE initially accepted the tender under a reservation of rights and later decided that it did not have a duty to defend Parks under his personal liability coverage for libel, slander, and defamation. Parks retendered several months later with additional facts, but FIE again declined to defend.

Parks assigned his claims against FIE to the Broughton Law Group. Broughton then sued FIE for breach of contract and bad faith. The trial court granted FIE summary judgment. On appeal, Broughton contends FIE breached its duty to defend Parks in the underlying lawsuit because, under California law, there existed a bare potential or

possibility of coverage under the policy's personal liability coverage for libel, slander, and defamation.

We conclude FIE did not breach its duty to defend Parks. Based on the information provided to FIE at the time of the first and second tender, Fink's outrage counterclaim did not raise a bare potential or possibility of coverage under Parks's policy.

We affirm.

## FACTS

In 2006, Fink prepared a will for John Balko which left most of Balko's estate to Parks. After Balko's death, a court concluded the will was invalid.

In January 2010, Parks sued Fink for legal malpractice. In April 2011, Fink counterclaimed, including a claim for the tort of outrage, and filed a declaration identifying numerous threats and insults made by Parks. In a June 2011 declaration, Fink alleged Parks continued to threaten and criticize her. She attached an e-mail Parks wrote to the former trial judge in the probate action and alleged Parks posted "derogatory comments" about her on the Internet.[1]

On July 1, 2011, Fink filed her ER 904 documentation with the trial court, disclosing 31 documents. On July 5, 2011, Parks tendered Fink's counterclaims to FIE. Parks's California homeowner's policy included a personal liability coverage section:

> We pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies. Personal injury means any injury arising from:

---

[1] Clerk's Papers (CP) at 197.

2

(1)  false arrest, imprisonment, malicious prosecution and detention.

(2)  wrongful eviction, entry, invasion of rights of privacy.

(3)  *libel, slander, defamation of character.*

(4)  discrimination because of race, color, religion or national origin.[2]

On July 14, 2011, the trial court dismissed all but Fink's outrage counterclaim. That claim alleged Parks threatened Fink's life on several occasions but referred to only one communication: a September 16, 2008 letter that Parks sent to Fink threatening and insulting her.

FIE initially accepted the tender under a reservation of rights and retained an attorney to defend Parks. On August 8, 2011, FIE determined there was no duty to defend. Defense counsel withdrew in early September 2011.

Parks challenged FIE's refusal to defend, but FIE reaffirmed its position. At that time, the only communication that formed the basis of Fink's outrage counterclaim was the September 16, 2008 letter. FIE determined no allegations in Fink's counterclaim suggested the September 16, 2008 letter was published to a third party.

On November 16, 2011, Parks retendered with a September 26, 2008 e-mail sent by Parks to Fink via Avvo.com. On November 29, 2011, FIE concluded the private Avvo e-mail had never been posted on the Avvo website nor otherwise published to a third party. FIE continued to ask Parks to provide any proof that the Avvo e-mail had been published to a third party, but Parks provided none. That same day, Parks provided copies of Fink's ER 904 documentation to FIE, including the Avvo e-mail, a

---

[2] CP at 59 (emphasis added).

3

September 26, 2008 e-mail, several undated press releases from Parks's charity, several cartoons and a comic strip, a letter to "c. ecklund & wife," and a Halloween card.

FIE refused the retender. Broughton sued FIE for breach of contract and bad faith, claiming FIE breached its duty to defend.[3] The trial court denied Parks's partial summary judgment motion and granted FIE's motion for summary judgment.

Broughton appeals.

<u>ANALYSIS</u>

This appeal presents the question whether FIE breached its duty to defend Parks on Fink's outrage counterclaim.[4]

*Choice of Law*

The parties contend California law governs. We agree. An insurance policy is a contract between an insurer and an insured.[5] We apply the most significant relationship test to contract choice-of-law issues.[6] We consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the residence and place of business of the parties.[7]

---

[3] At some point between March 2012 and October 2013, Parks assigned his claims against FIE to Broughton.

[4] Broughton assigns error to the trial court's denial of his motion for partial summary judgment. FIE contends the denial of a partial summary judgment is not appealable as a matter of right under RAP 2.2(a) because it is neither a "final judgment" nor a "written decision affecting a substantial right . . . that in effect determines the action and prevents a final judgment or discontinues the action." This dispute is of no consequence because the appeal of summary judgment in favor of FIE brings up on appeal the same issues that would be presented in an appeal of the denial of Broughton's motion for partial summary judgment.

[5] <u>State Farm Gen. Ins. Co. v. Emerson</u>, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

[6] <u>Mulcahy v. Farmers Ins. Co. of Wash.</u>, 152 Wn.2d 92, 100, 95 P.3d 313 (2004).

[7] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

The insurance policy here was negotiated, executed, and issued to protect a risk in California. The subject matter of the insurance policy was Parks's home in California. Parks is a resident of California, and FIE has its principal place of business in California. We conclude California law applies to this insurance policy.

*Duty to Defend*

Broughton contends FIE had a duty to defend Parks against Fink's outrage counterclaim. We disagree.

We review a summary judgment order de novo, performing the same inquiry as the trial court.[8] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[9] Summary judgment is proper if there are no genuine issues of material fact.[10]

Personal injury coverage generally applies to "injury which arises out of the commission of certain enumerated acts or offenses."[11] Coverage is "triggered by the offense," not the injury that a plaintiff suffers.[12] The policy here provides coverage for "personal injury," defined to include "any injury arising from . . . libel, slander, [and] defamation of character."[13]

---

[8] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

[9] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[10] Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

[11] Fibreboard Corp. v. Hartford Accident & Indem. Co., 16 Cal. App. 4th 492, 511, 20 Cal. Rptr. 2d 376 (1993).

[12] Id.

[13] CP at 427.

Liability insurance typically imposes two separate contractual duties on an insurer: to indemnify its insured against third party claims covered by the policy and to defend such claims.[14] "The duty to defend is broader than the duty to indemnify."[15] Even when "'coverage is in doubt and ultimately does not develop,'" the duty to defend may exist.[16]

The duty to defend arises upon tender.[17] "'[A] bare "potential" or "possibility" of coverage'" triggers the duty.[18] The insurer must consider all facts the insurer knows or becomes aware of at the time of tender.[19] If any facts stated or fairly inferable from the third party's counterclaim or otherwise known or discovered by the insurer suggest a potentially covered claim under the policy, the insurer has a duty to defend.[20]

An insurer satisfies its duty to defend by reviewing the policy, the facts alleged in the counterclaim, and any extrinsic facts known at the time of tender.[21] If the insurer makes an informed decision that there is no potential for coverage under the policy, the

---

[14] Howard v. Am. Nat'l Fire Ins. Co., 187 Cal. App. 4th 498, 519, 115 Cal. Rptr. 3d 42 (2010).

[15] Id. at 520.

[16] Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295, 861 P.2d 1153, 24 Cal. Rptr. 2d 467 (1993) (quoting Saylin v. California Ins. Guarantee Ass'n, 179 Cal. App. 3d 256, 263, 224 Cal. Rptr. 493 (1986)).

[17] Buss v. Superior Court, 16 Cal. 4th 35, 46, 939 P.2d 766, 65 Cal. Rptr. 2d 366 (1997).

[18] Howard, 187 Cal. App. 4th at 520 (alteration in original) (quoting Montrose, 6 Cal. 4th at 300).

[19] Jon Davler, Inc. v. Arch Ins. Co., 229 Cal. App. 4th 1025, 1032, 178 Cal. Rptr. 3d 502 (2014).

[20] Id.

[21] See Baroco W., Inc. v. Scottsdale Ins. Co., 110 Cal. App. 4th 96, 103, 1 Cal. Rptr. 3d 464 (2003).

insurer has no continuing duty to investigate.[22] But doubt as to whether an insurer owes a duty to defend is resolved in the insured's favor.[23] When the third party's counterclaim "'can by no conceivable theory'"[24] create a "'bare "potential" or "possibility" of coverage,'"[25] an insurer has no duty to defend.

### A. Initial Tender on July 5, 2011

We must determine whether the allegations in the counterclaim and all of the facts known by FIE at the time of the initial tender created a bare potential or possibility of coverage under Parks's policy. We compare the allegations in Fink's counterclaim and any extrinsic facts known by FIE at the time of tender with the terms of the policy.

Fink's outrage counterclaim focused upon the September 16, 2008 letter that Parks sent to her; specifically, on Parks's "death threats and insults."[26] On July 5, 2011, Parks tendered the outrage counterclaim to FIE. At that time, FIE had no facts other than those alleged in Fink's counterclaim on which to base its coverage decision. Parks provided no other information to FIE about the underlying circumstances of the outrage counterclaim. FIE did not know nor had reason to know of any extrinsic facts that potentially formed the basis of Fink's outrage counterclaim.

---

[22] Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114, 44 Cal. Rptr. 2d 272 (1995).

[23] John Davler, 229 Cal. App. 4th at 1032.

[24] Id. at 1032-33 (quoting Hartford Casualty Ins. Co. v. Swift Distrib., Inc., 59 Cal. 4th 277, 288, 326 P.3d 253, 172 Cal. Rptr. 3d 653 (2014).

[25] Howard, 187 Cal. App. 4th at 520 (quoting Montrose, 6 Cal. 4th at 300).

[26] CP at 298.

Under California law, a claim of libel, slander, or defamation requires publication of the alleged defamatory communication to a third party.[27] Absent an allegation of publication or facts potentially supporting publication, an insurer does not have a duty to defend a third party's counterclaim for libel, slander, or defamation.[28] Fink's counterclaim did not allege any publication of the September 16, 2008 letter.

Broughton argues his policy does not define "defamation" to require a publication. He contends an ordinary person would reasonably expect "libel" to mean the dictionary definition of "a written or oral defamatory statement or a representation or suggestion that conveys an unjustly unfavorable impression."[29] But the plain meaning of a "defamatory statement" is a communication that "constitutes an injury to reputation."[30] No injury to reputation arises from a private letter between two parties about each other.

Broughton contends an insurer has constructive knowledge of every pleading and document in any court file and has a continuing duty to investigate unknown extrinsic facts, but he cites no authority for these propositions.[31] Extrinsic facts may

---

[27] Lindsey v. Admiral Ins. Co., 804 F. Supp. 47, 52 (N.D. Cal. 1992); accord Shively v. Bozanich, 31 Cal. 4th 1230, 1242, 80 P.3d 676, 7 Cal. Rptr. 3d 576 (2003); Total Call Int'l, Inc. v. Peerless Ins. Co., 181 Cal. App. 4th 161, 169, 104 Cal. Rptr. 3d 319 (2010); Barnett v. Fireman's Fund. Ins. Co., 90 Cal. App. 4th 500, 510 n.5, 108 Cal. Rptr. 2d 657 (2001).

[28] See Shanahan v. State Farm Gen. Ins. Co., 193 Cal. App. 4th 780, 789, 122 Cal. Rptr. 3d 572 (2011) (insurer had no duty to defend when the third party "complaint did not allege a publication, a necessary element of slander").

[29] Appellant's Br. at 29-30.

[30] Shively, 31 Cal. 4th at 1242.

[31] At oral argument, Broughton suggested a California statute purportedly puts a person on constructive notice of any public records. To the extent that Broughton was referring to California Civil Code § 19, it provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has

8

give rise to a duty to defend, but such facts must be known by the insurer at the time of tender. Broughton conceded at oral argument that absent knowledge of Fink's April and June 2011 declarations, there is no possible claim of libel, slander, or defamation. No evidence suggests that at the time of tender, FIE knew the contents of the court file, including the two declarations.

Broughton also suggests Fink's declarations were provided to defense counsel retained by FIE. He relies on the declaration of Parks's former attorney that the attorney discussed the allegations in Fink's counterclaim with defense counsel and "provided her with whatever assistance she needed, including giving her my thoughts and *access to* all pleadings/documents in this matter."[32] But "access to" pleadings and documents is not the same as providing those pleadings and documents. No evidence suggests FIE knew or had reason to know of Fink's declarations at the time of tender.

Gunderson v. Fire Insurance Exchange[33] is helpful. The court in Gunderson recognized that the test for the duty to defend is whether the facts known to the insurer at the time of tender created a potential for coverage under the policy.[34] The court determined that most of the extrinsic evidence of a potential claim under the plaintiffs' policy arose after the third party's complaint was tendered to the insurer.[35] An insurer

---

constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." But Broughton does not provide, and we are not aware of, any duty-to-defend case that has applied this statute to conclude that an insurer has constructive notice of a court file in the underlying lawsuit that may trigger an insurer's duty to defend.

[32] CP at 42 (emphasis added).

[33] 37 Cal. App. 4th 1106, 44 Cal. Rptr. 2d 272 (1995).

[34] Id. at 1113-14.

[35] Id. at 1117.

may base its determination on whether to accept tender on the facts available to it at that time.[36] Once an insured makes an informed decision that there is no potential for coverage, it does not have a continuing duty to investigate or monitor the lawsuit.[37] Absent any retender alleging new facts extrinsic to the third party complaint, the insurer has "no way to know of [any] new extrinsic facts, and no obligation to find them out by itself."[38]

As in Gunderson, FIE ultimately concluded on the basis of the information provided to it at the time of tender to refuse the tender. The only information known to FIE at the time of tender was that the September 16, 2008 letter had not been published to a third party. FIE had no duty to defend Parks because there was no potential for coverage under the policy. Therefore, we conclude FIE did not have a duty to defend Parks against Fink's outrage counterclaim based on the initial July 5, 2011 tender.

B. Tender of Post-Declination Information

The duty to defend is generally determined from all of the information available to the insurer at the time of tender.[39] But "later developments may impact the insurer's duty to defend."[40] If an insured retenders new information, the insurer has a duty to analyze whether the information potentially triggers coverage under the policy. The

---

[36] Id. at 1114.

[37] Id. at 1115-17.

[38] Id. at 1117.

[39] Howard, 187 Cal. App. 4th at 519.

[40] Id. at 519-20.

insured must bring to the insurer's attention new facts indicating a potential for coverage.[41]

On November 16, 2011, four months after Fink's counterclaim had been tendered to FIE, Parks identified the Avvo e-mail as allegedly triggering coverage. This communication was a private e-mail sent from Parks to Fink via Avvo.com on September 26, 2008. Fink alleged in her April 2011 declaration that this communication was published on Avvo's website. But Parks did not provide that declaration to FIE, and FIE determined the e-mail had not been posted on Avvo's website. Because the only extrinsic evidence known to FIE was that the e-mail was private, similar to an e-mail sent through any other e-mail provider, there was no suggestion that the e-mail had been published to any third party. Therefore, we conclude FIE did not have a duty to defend based on the Avvo e-mail.

As to Parks's September 11, 2008 letter to the former trial judge in the probate action, Parks did not provide this letter to FIE at the time of his initial tender nor as part of his post-declination tender. The record does not support that FIE was aware of or knew about the existence of this letter until Broughton filed his motion for partial summary judgment, long after his tender and retender to FIE. Absent some additional tender of defense, FIE "had no way to know of these extrinsic facts, and no obligation to find them out by itself."[42] Therefore, FIE did not have a duty to defend Parks based on extrinsic facts that were never provided to it.

---

[41] See Gunderson, 37 Cal. App. 4th at 1117.

[42] Id.

On November 29, 2011, Broughton provided FIE copies of Fink's ER 904 documentation. This documentation included the September 16, 2008 letter, the Avvo e-mail, a September 26, 2008 e-mail from Parks to Fink, undated press releases, several cartoons and a comic strip, a letter to "c. ecklund & wife," and a Halloween card. But none of these communications triggered a duty to defend.

The September 26, 2008 e-mail reveals only a private e-mail from Parks to Fink. No evidence suggests this e-mail was published to a third party.

The cartoons and the comic strip generally criticizing lawyers and lawyers involved in preparing wills were drawn by an artist. Parks sent these communications only to Fink. No evidence in the record suggests these communications were published to a third party. And a defamation claim requires that the defamatory statement "'specifically refer to, or be "of and concerning," the plaintiff in some way.'"[43] Absent an express reference to the plaintiff, there must be a "reasonable implication" that the plaintiff is the person referred to in the communication.[44] "There is no single test for making this determination. 'Each case must stand on its own facts.'"[45]

Here, the artist did not expressly identify or refer to Fink. Although Broughton claims Parks must have communicated defamatory information to the artist, there is no

---

[43] Total Call Int'l, 181 Cal. App. 4th at 170 (quoting Blatty v. N.Y. Times Co., 42 Cal. 3d 1033, 1042, 728 P.2d 1177, 232 Cal. Rptr. 542 (1986)); Tamkin v. CBS Broadcasting, Inc., 193 Cal. App. 4th 133, 146, 122 Cal. Rptr. 3d 264 (2011) (to be "of and concerning" the plaintiff, the test is whether a reasonable person would have understood the communications as referring to the plaintiff).

[44] Hartford Cas. Ins. Co. v. Swift Distrib., Inc., 59 Cal. 4th 277, 293, 326 P.3d 253, 172 Cal. Rptr. 3d 653 (2014).

[45] Tamkin, 193 Cal. App. 4th at 146 (quoting Bindrim v. Mitchell, 92 Cal. App. 3d 61, 78, 155 Cal. Rptr. 29 (1979)).

reasonable implication that Parks mentioned Fink by name to the artist. Nor would a reasonable person have understood that the cartoons referred to Fink.

The Halloween card was sent by Parks to Fink. No evidence suggests the card was published to a third party.

In his letter to "c. ecklund & wife,"[46] Parks wrote, "You, and *all the greedy lawyers involved with this* have ruined my, and my families, life."[47] Parks did not expressly identify Fink. No evidence suggests a reasonable person would have understood these communications as referring to Fink.

The undated "press releases" do not name Fink but include negative references to "the main estate lawyer," "my cousin's estate lawyer," "estate lawyer," "the lawyer," "several other Seattle lawyers," "my own lawyer," and "his main estate lawyer."[48] We do not know who authored the relevant portions of the press releases or that they were ever actually made available to the press, but there is a possibility they were accessible on the Internet. As previously noted, a defamatory statement must "'specifically refer to, or be "of and concerning," the plaintiff in some way.'"[49] And California law looks to whether there is a reasonable implication that the person claiming defamation is referred to in the communication.[50] Broughton provides no authority that the reasonable implication standard depends upon a reasonable person who is aware of all the background information in the underlying lawsuits. And it appears that several

---

[46] Craig Ecklund was a beneficiary of Balko's will in the probate action.

[47] CP at 163 (emphasis added).

[48] CP at 185-86.

[49] Total Call Int'l, 181 Cal. App. 4th at 170 (quoting Blatty, 42 Cal. 3d at 1042).

[50] Hartford Cas. Ins. Co., 59 Cal. 4th at 293.

attorneys were involved in Balko's probate, including Broughton, whom Parks hired to assist him in some of those proceedings. The references to lawyers in the press releases do not expressly identify Fink by name. We are not convinced a reasonable person would conclude that the press releases reasonably implied that Fink was one of the lawyers referred to. Therefore, on the authority cited by Broughton, we conclude FIE did not have a duty to defend as to the press releases.

Lastly, Broughton seeks attorney's fees. But Broughton has not prevailed and is not entitled to attorney's fees on appeal.[51]

## CONCLUSION

We conclude FIE did not have a duty to defend Parks against Fink's outrage counterclaim.

Affirmed.

WE CONCUR:

_____

_____

_____

---

[51] See Olympic Steamship Co., Inc. v. Centennial Ins. Co., 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991) (extending "the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend" an insured).